## BANDES v. COMMISSIONER OF INTERNAL REVENUE.

### No. 245.

Circuit Court of Appeals, Second Circuit.
March 12, 1934.

Allen G. Gartner, of Washington, D. C., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Helen R. Carloss and Sewall Key, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

In 1928 the petitioner received payment of a condemnation award, with interest, for real estate condemned by the city of New York. The sum the petitioner received was largely in excess of the cost of the land to him, and the question presented is whether a taxable gain was realized in view of section 112 (f) of the Revenue Act of 1928 (45 Stat. 817, 26 USCA § 2112 (f). This section reads as follows:

"(f) *Involuntary Conversions.* If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corpora-

tion owning such other property, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended."

The Board held that the conditions specified in the statute were not met. This conclusion is here challenged.

It appears that in 1926 the petitioner, his brother, and another person acquired a tract of unimproved land for the purpose of building an apartment house thereon. It was intended that Naside Construction Company, a corporation whose entire capital stock was owned equally by the petitioner and his brother, should erect the building. Before construction was begun the city of New York condemned the land for a school site. Condemnation proceedings were started January 20, 1927, and title passed to the city on February 24, 1927, but not until June, 1928, was the award confirmed. The amount awarded to the brothers, with interest thereon from February 24, 1927, totaled $120,267.93, and was paid on July 6, 1928. Each brother realized thereby a gain over the cost of his interest in the land in an amount of some $42,000. They contend that this gain could not be recognized for taxation because of circumstances now to be stated. After the brothers Bandes learned that condemnation was imminent, they looked for other property on which to build an apartment house. Being unable to find a tract of equal size, they bought two separate parcels which together had about the same area as the land condemned. By contracts made in January and February, 1927, before the condemnation award, they agreed to buy a parcel located on Walton avenue for a price of $58,000. By other contracts dated February 15 and March 18, 1927, they agreed to buy a parcel located on Jerome avenue for a price of $60,000. Subsequently both parcels were deeded to the brothers and by them were transferred to Naside Construction Company by deeds recorded May 19, 1927. An apartment house was started on the Jerome avenue parcel in the fall of 1927, and building construction began on the Walton avenue parcel in May or June, 1927. When the brothers received payment of the condemnation award, the money was deposited in their joint bank account. Out of the sum so received $4,328.20 was paid to their attorneys for services in the condemnation proceedings, an aggregate of $115,000 was paid to Naside Construction Company in various sums between July 6

and August 15, 1928, and $939.73 was left in their joint bank account. It was the practice of the brothers, both before and after payment of the award, to make advances to their corporation and to receive money from it, as it obtained money from mortgage loans. At the end of 1927 the corporation had bills payable of $152,000, all or most of which represented advances by the brothers Bandes. At the end of 1928 it owed them $120,000 for moneys advanced.

The petitioner argues that the acquisition of other property by the brothers Bandes to replace the land which the city was threatening to condemn for a school site was an involuntary conversion of the property subsequently condemned "into property similar or related in service or use." We think this is a misconstruction of the statute. The section under consideration recognizes that, as a result of destruction, theft, seizure, or condemnation or the threat thereof, a taxpayer's property may be involuntarily converted either into similar property or into money. The former alternative covers cases where the insurer, public authority, or person bound to make good the destroyed, stolen, seized, or condemned property replaces it in kind with similar property; the latter covers cases where the property is paid for in money, which the taxpayer may forthwith expend to make his own replacement, either by acquiring similar property, or by acquiring control of a corporation owning such property, or by establishing a replacement fund. This construction is supported by the legislative history of the statute and by the Treasury Regulations promulgated under it. See article 1579, Reg. 65; article 1579, Reg. 69; article 579, Reg. 74. The antecedent of the statute is section 214 (a) (12) of the Revenue Act of 1921 (42 Stat. 241). This expressly dealt only with an involuntary conversion of property "into cash or its equivalent," and the nonrecognition of taxable gain was conditioned upon the taxpayer's proceeding forthwith to expend the proceeds of such conversion in the manner specified in the statute. In section 203 (b) (5) of the Revenue Act of 1924 the provision was amended to its present form (43 Stat. 256, 26 USCA § 934 (b) (5); it has been re-enacted in identical language in the Acts of 1926, § 203 (b) (5) and 1928, § 112 (26 USCA § 934 (b) (5) and § 2112). In reports to the Senate and to the House, the sponsors of the 1924 bill stated that "The existing law exempts from tax the proceeds from an involuntary conversion of property but fails to grant an exemption if the property is replaced in kind by the insurance company or similar person. The bill exempts the gain from an involuntary conversion whether the replacement is made by the taxpayer or by the insurance company." H. Rep. No. 179, p. 13, 68th Cong. 1st Sess.

Replacement by the taxpayer must refer to his use of the money paid for the property, because, if replacement by the taxpayer out of any of his funds were considered a conversion in kind, there would be no conversion into money, for the two alternatives are mutually exclusive. In the case at bar there was clearly a conversion of the condemned property into the money paid for it by the city, and the inquiry must be whether the petitioner expended the money in the manner required by the statute as a condition precedent to nonrecognition of gain or loss.

It is tempting to say that, if a taxpayer buys lot B on borrowed money and pays the debt with the award he gets for the condemnation of lot A, he has acquired lot B with the award. Whether the statute will permit of such a construction we need not now decide. To sustain the petitioner in the present case, we should have to construe it even more broadly and say that a taxpayer may use any of his funds to buy the new property, and, when he recoups the expense by receipt of the award, regardless of how it is actually expended, the new property may be considered to have been acquired out of the award. This would leave nothing to the statute except that the taxpayer must acquire new property with an intent to substitute it for the old. The language is much too specific to be capable of that construction. Consequently, even if we should disregard the distinction between the brothers Bandes and their Naside Company, as the petitioner contends, we cannot hold that this award was expended to acquire the new property, or to acquire control of a corporation owning such property, or to establish a replacement fund. The petitioner has failed to bring himself within section 112 (f), 26 USCA § 2112 (f), and so must include as taxable gain the profit realized on the disposal of the property condemned.

Order affirmed.