## TWINBORO CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 45.

Circuit Court of Appeals, Second Circuit.

May 7, 1945.

George G. Tyler and Cravath, Swaine & Moore, all of New York City (Wm. Dwight Whitney, Roswell Magill, and William R. White, all of New York City, of counsel), for petitioner.

Hilbert P. Zarky, of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Robert N. Anderson, Sp. Assts. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This case presents only one point in addition to those which we discussed in Winter Realty & Construction Co. v. Commissioner of Internal Revenue, 2 Cir., 149 F.2d 567, handed down herewith. It is this: Whether an owner whose property has been condemned may buy "similar property" in anticipatory replacement of the award, pay for it out of his own funds, recoup himself later out of the award when he gets it, and treat any "gain" as exempt under § 112(f), 26 U.S.C.A. Int.Rev.Code, § 112(f). The taxpayer seeks to dis-

tinguish this situation from that which was before us in Bandes v. Commissioner, 2 Cir., 69 F.2d 812, because here the property condemned was a garage, and the "similar property" was also a "garage," bought "in anticipatory replacement" of the first. In Washington Railway & Electric Co. v. Commissioner of Internal Revenue, 40 B. T.A. 1249, the Board of Tax Appeals, upon a review by the full Board, disagreed with our interpretation; but sought to distinguish the facts so as to sustain our decision. We may of course have been wrong and the Board right, but the attempted distinction is untenable. In Bandes v. Commissioner, supra, the taxpayers had bought one parcel of land on which they meant to put up an apartment; but before they could do so, it was condemned. They looked about for a substitute, and found two parcels on which they then proceeded to build apartments. The attempted distinction is apparently that, as they had not yet built the apartment when the first parcel was condemned, and, as they might change their minds, the new purchases could not have been made "in anticipatory replacement" of the old. On what basis this can be supported we do not understand; but, be that as it may, we had not the slightest intention of depending upon anything of the sort; we assumed that the two parcels were bought "in anticipatory replacement" of the first, and to rest our decision upon our understanding that that would not serve. We adhere to that interpretation, though, as before, we reserve decision in case an owner borrows money to pay for "similar property," and later uses the award to pay the debt. Possibly that may be an instance where the award is "expended in the acquisition of other property similar * * * to the property so converted." That was not this case, for here the taxpayer bought and paid for the property out of its own funds.

It is quite true that the doctrine will at times put an owner in the trying dilemma of choosing between allowing his business to be stopped, and being obliged to pay a large tax upon a "gain" "realized" against his will. There will be no method by which he can procure any substitute property in season to supply his needs, and yet to avail himself of the privilege which would concededly be his if he were not pressed to act at once. It can therefore be plausibly argued that the situation is a casus omissus; and if we felt sure enough

that that were true, we might not stick at its defective expression. But we are not sure whether Congress really meant to provide the full measure of relief which a complete fulfillment of its apparent purpose demanded. The law has now been on the books since 1921, and the regulations, at least since 1934 (Article 112(f)-1, Regulations 86), have provided that "the taxpayer must trace the proceeds of the award into the payments for the property so purchased," although the proceeds need not be "earmarked"—whatever that may mean. After every allowance which can properly be made for failure to cover obviously overlooked occasions, we remain in too much doubt to force the language so far from its literal meaning. Moreover, it should not be forgotten that we are dealing with an exemption.

Order affirmed.