## OVIDER REALTY CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6335.

United States Court of Appeals Fourth Circuit.

Argued Nov. 15, 1951.

Decided Dec. 29, 1951.

M. J. Levin, Milwaukee, Wis., for petitioner.

Virginia H. Adams, Sp. Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack and A. F. Prescott, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before SOPER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

This petition for review involves a deficiency in income taxes in the amount of $3,964.02 for the fiscal year ending May 31, 1947, growing out of a gain realized by the taxpayer when its plant was destroyed by fire and the proceeds of insurance policies received in the taxable year exceeded the adjusted cost of the building. The taxpayer

claimed that the gain should not be taxed since the insurance money was expended in the acquisition of similar property and therefore the gain should not be recognized by reason of the provisions of Section 112 (f) of the Internal Revenue Code and Treasury Regulations III, § 29.112(f)–1.[1] The Tax Court found that the taxpayer had not met the requirements of the statute and upheld the determination of the deficiency.

On February 5, 1946 a building owned by the taxpayer in Bluefield, West Virginia, was completely destroyed by fire with the exception of certain walls valued at $2,000. The building was insured for $75,200. It had cost the petitioner $65,000 and had depreciated $11,050 leaving an adjusted basis at the time of the fire of $53,950. On or about August 1, 1946 the proceeds of fire insurance on the building were paid in the amount of $73,200 and thereby the taxpayer derived a gain of $21,250, taking into account the salvage value of $2,000. The insurance money was received in the form of checks payable jointly to the taxpayer and the Life Insurance Company of Virginia, which held a mortgage lien on the property in the sum of approximately $53,000. The checks were endorsed by the taxpayer and delivered to the Insurance Company to be held in a suspense account pending restoration of the building. Plans for the new building were prepared by an architect and the work of construction began in October, 1946 and it was soon found that the cost of replacement would greatly exceed the proceeds of the insurance. It had first been intended to secure a mortgage loan from the Life Insurance Company, but the parties were unable to agree upon the terms of the transaction and accordingly the insurance money in the hands of the Life Insurance Company was used to pay the balance of the mortgage debt then owing in the amount of $45,622.04 and the taxpayer obtained funds from another source to complete the new building.

The Tax Court's decision was based upon the admitted fact that $45,622.04 of the proceeds of the insurance was not expended in the acquisition of similar property but was used to pay the mortgage debt and therefore the conditions of the statute were not met. This holding is in accord with the decisions of the Tax Court and of the appellate courts under similar circumstances. It has been uniformly held in cases under Sec-

---

1. § 112. Recognition of gain or loss—

\* \* \* \* \* \*

"(f) Involuntary conversions. If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or ·condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain)." 26 U.S.C. § 112.

Regulations III, § 29.112 (f)–1.

"Reinvestment of proceeds of involuntary conversion. Upon the involuntary conversion of property described in Section 112 (f) no gain is recognized if the provisions of that section are complied with. If any part of the money received as a result of such an involuntary conversion is not expended in the manner provided in Section 112(f), the gain, if any, is recognized to the extent of the money which is not so expended. \* \* \*

\* \* \* \* \*

"In order to avail himself of the benefits of Section 112 (f) it is not sufficient for the taxpayer to show that subsequent to the receipt of money from a condemnation award he purchased other property similar or related in use. The taxpayer must trace the proceeds of the award into the payments for the property so purchased. It is not necessary that the proceeds be earmarked, but the taxpayer must be able to prove that the same were actually reinvested in such other property similar or related in use to the property converted. \* \* \* "

tion 112(f) of the statute that the taxpayer must show that the money received from the compulsory or involuntary conversion of property, whether it occurs through a condemnation award or the payment of the proceeds of insurance after a fire loss, has been actually used to buy other similar property, and transactions which might seem roughly equivalent to such an expenditure have been held insufficient to bring into play the statutory exemption. Thus it has been held that the purchase of vacant land by the use of the taxpayer's funds in anticipation of the receipt of an award from the condemnation of similar property will not exempt from taxation the gain derived from the award when it is subsequently received. Bandes v. Com'r, 2 Cir., 69 F.2d 812, certiorari denied 293 U.S. 568, 55 S.Ct. 80, 79 L.Ed. 667; Twinboro Corp. v. Com'r, 2 Cir., 149 F.2d 574, certiorari denied 326 U.S. 754, 66 S.Ct. 93, 90 L. Ed. 453. And it has been held that the gain is taxable when, as in the pending case, the insurance money is used to pay a mortgage debt on the destroyed property or to pay a debt owing by the taxpayer to a bank, even though the destroyed property is subsequently restored and the taxpayer's financial ability to restore it is enhanced by the receipt of the proceeds of the insurance. Kennebec Box & Lumber Co. v. Com'r, 1 Cir., 168 F.2d 646, opinion by Judge Dobie; Continental Realty Co. v. Com'r, 1944 B.T. A.T.C.Memo.Dec.Par. 44010; cf. Massillon-Cleveland Akron Sign Co. v. Com'r, 15 T.C. 79; See also Winter Realty & Const. Co. v. Com'r, 2 Cir., 149 F.2d 567; Vim Securities Corp. v. Com'r, 2 Cir., 130 F.2d 106; Frischkorn Development Co. v. Com'r, 6 Cir., 88 F.2d 1009, affirming 30 B.T.A. 8.

This line of authority was recently recognized by Congress in the passage of the Act of October 31, 1951, whereby Section 112(f) was amended and its provisions to some extent relaxed. The report of the Congressional Committee in charge of the legislation, H. Rep. No. 798, 82d Cong., 1st Sess., contains the following comment upon the section as it then existed: "No relief is accorded under existing law where, before receipt of the proceeds for the converted property, the taxpayer purchases replacement property. Relief is denied in these anticipatory replacement cases since the benefits of Section 112(f) are limited to those cases in which the proceeds from the converted property can be directly traced into the subsequently acquired property. A problem also arises under the present law where the taxpayer uses a part of the proceeds from the converted property to pay off indebtedness on the converted property. In such a case the taxpayer is denied the benefits of Section 112(f), that is, the taxpayer must pay a tax on any gain from the converted property up to the amount of the proceeds which are used in liquidation of indebtedness on the converted property, even though he also fully replaces the converted property, since the amount used to pay off the indebtedness cannot be directly traced into the replacement property."

It may be noted that the stipulation of facts upon which the pending case was tried contains no statement as to the disposition of the balance of the insurance money amounting to $27,577.96 which remained after the mortgage debt was paid. We are assured that this sum was actually spent in the construction of the new building; but even if this fact were properly proved, it would not avail the taxpayer because it would still be true that $45,622.04 of the money was not so expended and hence the whole gain of $21,250 is taxable since the statute provides that if any part of the money is not expended in the acquisition of similar or related property "the gain, if any, shall be recognized to the extent of the money which is not so expended." See Frischkorn Development Co. v. Com'r, supra; Davis Regulator Co., 36 B.T.A. 437, 444; Mary W. T. Connally, 32 B.T. A. 920, 925.

Affirmed.