**SNEED et al. v. JONES.**

**Civ. No. 4960.**

United States District Court
W. D. Oklahoma.

Feb. 13, 1952.

Leon Shipp (of Robinson, Shipp, Robertson & Barnes), Oklahoma City, Okl., for plaintiffs.

Robert E. Shelton, U.S. Atty., Oklahoma City, Okl. and Graham Loving, Jr., Sp. Asst. to Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., and Andrew D. Sharpe, Sp. Asst. to Atty. Gen., on brief), for defendant.

VAUGHT, Chief Judge.

This is an action to recover the sum of $10,063.43, together with interest, for an

alleged erroneous assessment of income taxes for the taxable year ending June 30, 1949.

The facts were stipulated and were narrated in plaintiffs' brief as follows:

"J. Frank Sneed organized the Sneed Nursery Company in 1920 and operated the same as his individual business until July 1, 1948. On that date he entered into an oral agreement with his son, J. F. Sneed, Jr., and his son-in-law, R. R. Bloss, Jr., by the terms of which they were each to devote their full time and talent to the operation of the Sneed Nursery business and in consideration thereof at the end of each fiscal year J. F. Sneed, Jr., was to receive one-fourth of the profits derived from said business, R. R. Bloss, Jr., was to receive one-fourth of the profits derived from said business, and J. Frank Sneed was to receive one-half of the profits of the business. The physical properties remained in the ownership of J. Frank Sneed individually with the exception of the bank account, which was carried in the name of the Sneed Nursery Company. All receipts from sales of the Sneed Nursery Company were placed in the bank account and all of the expenses for the operation of the business were withdrawn from the bank account.

"In the latter part of 1948 J. Frank Sneed learned that he was in danger of losing the preference right lease upon which the parties conducted the nursery business and he began to look around for land suitable to re-establish the business. He found a tract located on N.E. 23rd Street in Oklahoma City which was owned by Oklahoma County.

"On January 4, 1949, the City of Oklahoma City filed an action in the District Court of Oklahoma County, State of Oklahoma, against the said J. Frank Sneed for the purpose of condemning his preference right lease upon which the business was conducted, together with the greenhouses, buildings, appurtenances and nursery stock located thereon. Appraisers were appointed to assess the damages in condemnation and thereafter filed their report with the Clerk of said Court.

"On February 10, 1949 J. Frank Sneed began negotiations with Oklahoma County to secure the tract on N.E. 23rd Street. On March 28, 1949 he entered into a written contract with Oklahoma County for the purchase of the tract of land on N.E. 23rd Street upon which to relocate his nursery. By the terms of this contract he was required to place in escrow the sum of $41,-718.00. He obtained this sum by borrowing $35,000.00 from the First National Bank and Trust Company of Oklahoma City and the sum of $6,718.00 from the Sneed Nursery account.

"On the 12th day of April, 1949 J. Frank Sneed entered into a written agreement with the City of Oklahoma City for the sale of his preference right lease involved in the condemnation proceedings for the sum of $175,000.00. On the same date he received and deposited the said sum of $175,-000.00 in a special bank account. The City of Oklahoma City dismissed the condemnation case. On the same day, that is, April 12, 1949, he wrote a check against the special bank account in the sum of $41,852.91 payable to the Sneed Nursery Company (this was the amount of the original escrow deposit plus interest thereon) and deposited the same in the Sneed Nursery account. Upon the same date he wrote a check upon the Sneed Nursery Company account in the sum of $34,630.55 (the amount of the bank loan less interest deducted at the time it was made) to the First National Bank and Trust Company of Oklahoma City for the purpose of repaying that loan. The balance of the $41,852.91 was left in the Sneed Nursery account to reimburse it for the $6,718.00 previously obtained from it and used to make the escrow deposit to purchase the tract of land on N. E. 23rd Street from Oklahoma County.

"It developed that the County had some difficulty in perfecting title to its tract of land and on April 19, 1949, J. Frank Sneed entered into a lease with the County Commissioners whereby he was permitted to lease the tract for seven years at a rental of $1,000.00 per year, three years' rental to be paid in advance, and the rental to apply on the purchase price. $3,000.00 of the money previously placed in escrow at

the First National Bank and Trust Company was paid to Oklahoma County, Oklahoma. Pursuant to advertisement, receipt and acceptance of bids, the actual sale of the property was made by the County to J. Frank Sneed on August 3, 1949, and the balance of the purchase price, that is, $38,-718.00, was paid from the escrow account to the County Commissioners of Oklahoma County.

"After the receipt of the $175,000.00 from the City of Oklahoma City on June 28, 1949, J. Frank Sneed made an application to the Collector of Internal Revenue to establish a replacement fund in the amount of $135,000.00 for the purpose of replacing the nursery property including the land necessary therefor. On October 20, 1949, after the new site had been acquired in the foregoing manner, the Collector of Internal Revenue by letter of that date granted permission to establish a replacement fund in the sum of $93,282.00 which amount was determined as follows:

| | |
|---|---|
| Cost to replace entire property | $135,000.00 |
| Less: Borrowed funds expended in the replacement of land | 41,718.00 |
| Amount of replacement fund | $ 93,282.00 |

"No contention is made that the amount of the requested replacement fund was improper or too large. The Collector apparently denied the full amount requested upon the theory that the borrowed funds expended in the replacement of land could not be properly traced and for that reason should be disallowed.

"On the 13th day of September, 1949 the plaintiffs herein filed their income tax returns for the fiscal year ending June 30, 1949 upon the theory and belief that they were entitled to a replacement fund of $135,000.00 and paid taxes thereon in the amount of $8,200.98. Upon the receipt of the Commissioner's letter of October 20, 1949 disallowing the borrowed funds expended in the amount of $41,718.00, the plaintiffs on November 21, 1949 filed their amended income tax return recognizing under protest the sum of $41,718.00 and paid an additional income tax thereon in the sum of $9,963.80 with interest at the rate

of 6 per cent per annum from September 15, 1949, making a total payment of $10,-063.43. This sum was paid under protest and a claim was submitted upon the grounds set forth therein and hereinabove set forth. The Commissioner denied the claim for refund and hence this action."

The Commissioner contends that money cannot be borrowed for the purpose of acquiring similar property and the loan repaid from funds received in a condemnation proceeding. The defendant's brief sets forth the Commissioner's argument as follows:

"The taxpayer, in anticipation of receiving an award on condemnation of his business property, entered into a contract for the purchase of replacement property, by the terms of which he was required to deposit in escrow the purchase price of that property. This money he received partly by borrowing and partly by a withdrawal from his business bank account. Later when the award had been received, he withdrew part of its proceeds and placed them in the business account on which he drew a check payable to the bank in repayment of the loan, leaving the balance of the award proceeds in the business account.

"Since the replacement property was purchased by the taxpayer out of separate funds, it was not purchased with the proceeds of the award. Therefore, to that extent those proceeds were not expended for the acquisition of replacement property but were used by the taxpayer to recoup his previous expenditures."

The argument involves the proper interpretation of Title 26 U.S.C.A. § 112(f), which is as follows: "If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property

so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain)."

■■ When the situation here is stripped of all its technical details, it resolves itself into a very simple, practical matter. The plaintiff sold his property to the City of Oklahoma City for $175,000 and purchased a replacement for $135,000. The controversy is over the $41,718 the plaintiff put in escrow on his contract of purchase of the replacement and which he had borrowed with the expectation of recoupment from the condemnation award. The taxing authorities conceded he was entitled to $93,-282 of the $135,000 but was not entitled to the $41,718, as he had borrowed that sum previous to obtaining what it terms the award. The fallacy of this theory is the fact there was no award. A settlement was effected, the condemnation suit was dismissed which carried with it the prospective award, and the property was sold outright to the city for $175,000. Our courts have continually held that taxation is an intensely practical matter, and that the substance of the thing done and not the form it took must govern. Quoting from the opinion in Commissioner of Internal Revenue v. Ashland Oil & Refining Company, 6 Cir., 99 F.2d 588, 591: " * * * It has been said too often to warrant citation that taxation is an intensely practical matter, and that the substance of the thing done and not the form it took must govern. This principle has been repeatedly invoked by the Commissioner and applied by the Board. (Citing authorities.) And without regard to whether the result is imposition or relief from taxation, the courts have recognized that where the essential nature of a transaction is the acquisition of property, it will be viewed as a whole, and closely related steps will not be separated either at the instance of the taxpayer or the taxing authority. Prairie Oil & Gas Co. v. Motter, 10 Cir., 66 F.2d 309; * * *. The Prairie Oil & Gas Case, supra, bears to the case at bar a close resemblance. It is not to be distinguished by the fact that the issue there was whether there was a reorganization so as to fix the base for depletion deductions. *The principle governing decision was that a single transaction must be considered singly and not be divided into its several steps, each to be considered as a separate transaction in respect to tax liability."* (Emphasis added.)

Measured by this principle we have here a single transaction. A man sells his property and buys out of the proceeds a replacement. Several steps were employed in accomplishing the transaction. In 1948 the plaintiff discovered that he was in imminent danger of losing the property upon which his nursery was located. He began to investigate the possibilities of replacement ground. He found such a place on North East 23rd Street owned by the county. On January 4, 1949 the city began a condemnation suit against him on the property where his nursery was located. On January 21, 1949 appraisers were appointed by the court to assess damages. On February 10, 1949 he began negotiations with the county for the 23rd Street property to replace the property being condemned and on March 28, 1949, entered into a contract of purchase at a price of $135,000. He was required to place in escrow the sum of $41,718 as an initial payment. Having no such funds available, he borrowed $35,000 from the bank and $6,718 from the Sneed Nursery account, making the escrow payment of $41,718 in the form of a certified check. On April 19 difficulty developed in perfection of title on the 23rd Street property. He then arranged to lease the property for a period of seven years at $1,000 per year, three years of which was to be paid in advance and the rentals to be applied on the purchase price. On April 12 Sneed, upon receipt of the sale price of $175,000, placed it in a special account. On that date the city dismissed the condemnation suit. On that same date Sneed paid off the loan to the bank and to the Sneed Nursery ac-

count. After the necessary steps were completed concerning the title, Sneed completed the transaction by paying the balance of $93,282 to the county and became the owner of the 23rd Street property. On June 28, 1949 Sneed made application to establish the replacement fund of $135,000. The application was approved for $93,282 and rejected as to $41,718.

██ The government argues at great length and cites authorities in connection therewith, that because Sneed borrowed $41,718 to place in escrow the initial payment on the replacement property, he should not be heard to say it was part of the purchase price of the property when he paid off the loan. The court has considered the government's argument and the authorities cited in support thereof, but is unable to see how their application to the facts in the instant case would justify the action of the Commissioner in collecting this additional tax. The mere reading of the stipulations and the statute involved makes it apparent that there was no justification in denying the $41,718 item as a replacement and assessing it as income within the provisions of the statute. This certainly is "an intensely practical matter" and "the substance of the thing done and not the form it took must govern." When we cease to follow this principle then we cease to determine the legitimate tax and go into the field of confiscation of property, which was never intended.

Counsel of the government state in the brief: "In this particular case the taxpayer has even less grounds for complaint, because he could have readily complied with the provisions of Section 112(f) of the Code. The award money was paid to him prior to completion of the purchase of the replacement property. Therefore, instead of paying for the property out of other funds, he could have paid for it out of the proceeds of the award. However, this the taxpayer did not do."

The condemnation suit was dismissed and there was no award. When that case was dismissed any award, or attempted award, went with it and the whole transaction became a simple sale and replacement out of the proceeds of the sale, in its last

analysis. The plaintiff is entitled to recover the sum of $10,063.43 together with interest as provided by law.

Findings of fact, conclusions of law and a form of judgment consistent with this opinion may be submitted within thirty days from this date.