**STATE DISTRIBUTORS, Inc., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 177–56.**

United States District Court
D. New Jersey.

March 15, 1957.

Edward Baumgarten, Newark, N. J., for plaintiff.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., Charles K. Rice, Asst. Atty. Gen., James P. Garland, Leo M. McCormack, Attorneys, Department of Justice, Washington, D. C., for defendant.

FORMAN, Chief Judge.

There are no disputed questions of fact in this case. The plaintiff, State Distributors, Inc., a New Jersey corporation, and the defendant, the United States of America, have stipulated, among others, the following pertinent facts:

Plaintiff owned a group of buildings for retail merchandising in Trenton, New Jersey. On February 14, 1948, a fire occurred in the buildings. They were insured by several companies. The loss was determined to be $122,778.25. The property was encumbered by a mortgage to the New England Mutual Life Insurance Company in October of 1946 in the sum of $225,000. At the time of the fire plaintiff owed $210,622.49 on the mortgage. In accordance with a conventional provision in the mortgage in which plaintiff covenanted to keep the property insured against loss by fire and other risks and to assign policies to the mortgagee, the carriers paid the proceeds of the policies directly to the mortgagee. The balance of the mortgage was satisfied by the plaintiff by periodic payments, the last of which was made in May, 1949.

On June 15, 1948, plaintiff filed with the then Collector of Internal Revenue for the First District of New Jersey

its corporate tax return for its fiscal year March 1, 1947, to February 29, 1948, having been granted an extension of time to file the said return. In it plaintiff reported the receipt of rental income of $40,000 for the taxable year, deductions amounting to $28,316.75, or a net income of $11,683.25, on which it computed its income tax liability to be $2,587.15, which it satisfied.

On May 1, 1953, the Commissioner of Internal Revenue notified the plaintiff of a tax deficiency brought about as follows:

| | | |
|---|---|---|
| Net income as disclosed by return | | $ 11,683.25 |
| Unallowable deductions and additional income: | | |
| (a) Depreciation | $ 258.64 | |
| (b) Gain on Involuntary Conversion | 23,180.70 | |
| | 23,439.34 | |
| Corrected Net Income | | $ 35,122.59 |
| Tax Deficiency | | 5,854.66 |
| Interest | | 1,997.42 |
| Total | | $ 7,852.08 |

The Commissioner arrived at the amount of the gain on involuntary conversion in the following manner:

| | | |
|---|---|---|
| Sound value of buildings at date of fire, per insurance adjusters | | $276,032.39 |
| Cost of buildings damaged: | $223,596.98 | |
| Less: Depreciation to date of fire | 16,991.17 | |
| Net cost of buildings | | 206,605.81 |
| Insurance recovery on loss to buildings: | | $122,778.25 |

Insurance recovery on loss to buildings

Sound value of buildings at date of fire × Net cost of buildings = Loss based on cost:

$$\frac{\$122,778.25 \times \$206,605.81}{\$276,032.39} = \$ 91,897.55$$

| | | |
|---|---|---|
| Insurance recovery on loss to buildings | | $122,778.25 |
| Adjusted cost of buildings damaged: | $91,897.55 | |
| Fire expenses | 750.00 | |
| Fire adjusters' fees | 6,950.00 | |
| Total | | $ 99,597.55 |
| Gain on fire | | $ 23,180.70 |

A timely assessment was made by the Commissioner of Internal Revenue in September 1953 for the tax and interest, as aforesaid, in the aggregate of 7,852.-08, which the plaintiff paid.

On June 8, 1954, plaintiff filed a claim for refund in the sum of $7,792.70, its computation of taxes and interest allegedly overpaid. The Commissioner rejected the claim.

In January 1949, plaintiff entered into the first of several contracts for the reconstruction and restoration of the property damaged by the fire. The actual reconstruction was commenced in January 1949 and finished in the latter

part of that year. The amount expended was in excess of the proceeds of the insurance policies in the amount of $122,778.25, paid to the mortgagee, New England Mutual Life Insurance Company. On June 23, 1949, the plaintiff gave a mortgage on the said property to Phoenix Mutual Life Insurance Company of Hartford, Connecticut, as security for a loan of $290,000. The proceeds of the mortgage were used to pay for the reconstruction costs.

Plaintiff contends that the determination by the Commissioner of the gain from the involuntary conversion in the sum of $23,180.70, as aforesaid, was in error, as this sum was nontaxable. In its complaint it demanded judgment in the sum of $7,792.70 with interest from December 15, 1953. The defense is that the said sum of $23,180.70 was taxable capital gain income.

The applicable statute is 26 U.S.C. § 112(f), as amended by § 151, Revenue Act of 1942, c. 619, 56 Stat. 798, which reads as follows:

"(f) Involuntary conversions. If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain)."

The administrative regulation implementing the statute, and which has pertinence to the matter before the court is U.S.Treas.Reg. 111 (1943) 29 Code Fed. Regs. § 29.112(f) (Cum.Supp.1949), which reads as follows:

"Sec. 29.112(f)–1. Reinvestment of Proceeds of Involuntary Conversion.

\* · \* \* \* \* \*

"In order to avail himself of the benefits of Section 112(f) it is not sufficient for the taxpayer to show that subsequent to the receipt of money from a condemnation award he purchased other property similar or related in use. The taxpayer must trace the proceeds of the award into the payments for the property so purchased. It is not necessary that the proceeds be earmarked, but the taxpayer must be able to prove that the same were actually reinvested in such other property similar or related in use to the property converted. The benefits of Section 112 (f) cannot be extended to a taxpayer who does not purchase other property similar or related in service or use, notwithstanding the fact that there was no other such property available for purchase."

Although the language of the regulation refers to "condemnation award" it has been applied as well to fire insurance awards, and will be so treated here.

The nub of the problem appears to lie in the defendant's contention that plaintiff does not meet the requirement of Treasury Regulation 111 that it could "trace the proceeds of the award into the payments for the property so purchased".

Plaintiff emphasizes the fact that the insurance award money was never under its control since it had been, by an

assignment clause in the mortgage, automatically awarded to the mortgagee. Since plaintiff has met all other provisions of Section 112(f), it urges that tracing "the proceeds of the award into the payments for the property so purchased" should not be interpreted in so strict a fashion as to apply to a situation where the taxpayer had little or no control over an insurance award.

Plaintiff places great stress upon the case of Leon Strauss v. Commissioner, 1954, 22 T.C. 140, in which the taxpayer had secured a loan to purchase new property in anticipation of a condemnation award, and paid off the loan from the award money. The Tax Court, concluding that no taxable gain resulted from the use of award money to pay off the loan, recognized that while it was difficult to trace anticipated award money into replacement property such difficulty did not preclude the taxpayer from enjoying the benefit of the statute. In a statement of acquiescence in the Strauss decision, there was issued Revenue Ruling 55–170, I.R.B. No. 13 (pp. 33, 34), March 28, 1955, in which it is stated that "none of the proceeds of the loan were at any time under the control of the petitioner, as a title company handled the purchase". This, plaintiff contends, has marked significance in the instant case because it likewise never had control over the insurance proceeds involved here.

Plaintiff points to Sneed v. Jones, D.C. W.D.Okl.1952, 103 F.Supp. 802, involving loans and separate accounts from both a bank and the taxpayer's own business for the purpose of acquiring property in anticipation of a condemnation award, where it was held that the repayments of such advances did not so operate as to preclude the taxpayer from receiving the benefits of Section 112(f). In support of its opinion, the court in the Sneed case quoted the following language from Commissioner of Internal Revenue v. Ashland Oil & Refining Co., 6 Cir., 1938, 99 F.2d 588, 591:

"And without regard to whether the result is imposition or relief from taxation, the courts have recognized that where the essential nature of a transaction is the acquisition of property, it will be viewed as a whole, and closely related steps will not be separated either at the instance of the taxpayer or the taxing authority."

And additionally, on page 591, supra, the court quotes approvingly the language of the circuit court decision in Prairie Oil & Gas Co. v. Motter, 10 Cir., 1933, 66 F.2d 309:

"The principle governing decision was that a single transaction must be considered singly and not be divided into its several steps, each to be considered as a separate transaction in respect to tax liability."

Plaintiff likewise stresses Washington Ry. & Elec. Co. v. Commissioner, 1939, 40 B.T.A. 1249, where taxpayer was also allowed to qualify under Section 112(f). In that case, the taxpayer, a public utility in the District of Columbia, expended money both before and after a condemnation award was received. The Tax Board found this procedure permissible; emphasized the public utility character of the taxpayer; and then went on to say:

"  *  *  * the very reason for enacting a relief provision requires that it be liberally construed; and where the circumstances of the case preclude all possibility of a fraud being practiced on the statute, we can perceive no valid reason why section 112(f) does not comprehend an anticipatory conversion of condemned (or about to be condemned) property into new property such as happened here before the award was paid; * * *." (page 1262.)

It is important to note, however, that in all three of the above cases upon which plaintiff places so much reliance, one striking thread of similarity runs through each which is not present in the

case at bar. And that is the fact that in each instance the taxpayer had made arrangements to replace condemned property in *advance* of the award, and that the award money replaced money borrowed or advanced for the acquisition of replacement property, and was to all intents and purposes earmarked for such purpose. The Washington Railway and Electric Company case, although involving the outlay of money both before and after the award, emphasized the anticipatory character of the award feature, and further stressed the uniqueness of that case because it involved a public utility.

It is to be observed, of course, that in condemnation cases the owner may always anticipate an award of damages even though he may not be secure as to the amount. On the other hand, an owner cannot anticipate a loss of his property by fire. The requirement of "tracing" seems to be much more easily susceptible of fulfillment in condemnation cases than in fire loss cases where mortgages are involved.

Two circuit court opinions deal with fire losses—both in substantial agreement, and without any opinion of comparable weight to the contrary—and hold that where the money received as a result of an involuntary conversion was not traceable into the acquisition of the replacement property, an award in excess of the adjusted cost of the destroyed property was properly taxable. These cases are Ovider Realty Company v. Commissioner of Internal Revenue, 4 Cir., 1951, 193 F.2d 266, and Kennebec Box and Lumber Co. v. Commissioner of Internal Revenue, 1 Cir., 1948, 168 F.2d 646.

In the Ovider case, which contains factual elements in large measure similar to the instant case, the taxpayer's property was destroyed by fire; the insurance award exceeded the adjusted cost of the building by approximately $21,000; some of the proceeds from the insurance award was used to pay off the old mortgage; a new building was erected after obtaining a mortgage from a different mortgage company, the taxpayer and the original mortgagee being unable to come to terms over a new mortgage. The court held that the gain was subject to tax to the extent of the amount used to satisfy the former mortgage, on the basis that such money had not been used to buy similar property.

Admittedly, in Ovider, the check for the insurance money had been made out *jointly* to the taxpayer and to the mortgagee, whereas in the instant suit the check went directly, because of the assignment clause in the mortgage agreement, to the mortgagee. The Ovider case does not discuss whether and under what conditions, discretionary or not, there had been an assignment of fire insurance proceeds in the original Ovider mortgage, but the distinction, if in fact, there is one, is rather thin. A check made out jointly to mortgagor and mortgagee would, on its face, without detailed investigation, indicate that the mortgagor's freedom of action with regard to such money was, for all practicable purposes, sufficiently limited.

In the Kennebec case, the award received by the taxpayer (which award substantially exceeded the adjusted cost basis of the destroyed property) was placed in a special bank account, from which the taxpayer withdrew funds to pay off the previous mortgage, and for other general purposes. The original balance was restored by deposits made from taxpayer's own funds, but the court held that the gain realized on the insurance proceeds was taxable to the extent of the withdrawals from the insurance fund although a sum substantially equal to the insurance award had been used to acquire similar property—the theory, of course, being that there could be no tracing of the award money into the replacement property.

Plaintiff contends that the Kennebec case can be distinguished from the case at bar because the taxpayer in Kennebec did have control of the award money and voluntarily disposed of it. However, the

matter basic to the case is traceability and not control of the money.

The decisive and dispositive case for the issue at bar is the Ovider case, which plaintiff concedes, in its own language, "presents the same factual situation as does the case at bar." However, it adds, the "Tax Court and the Circuit Court relied on cases which did not present the same or similar facts as the case at bar. It is respectfully contended that both courts reached an erroneous decision." It is true that the cases cited were not on all fours with the facts in the Ovider case, nor are they so represented in the opinion. They are, however, sufficiently illuminating to light the path to the result at which the court arrived in that case.

The facts that the insurance proceeds bypassed the plaintiff entirely and went directly into the hands of the mortgagee—that they were considerably less than the ultimate expenditures for the restoration of the buildings and that plaintiff came out burdened by a mortgage far in excess of the amount which it carried prior to the fire—appear to create hardship where the benefits of Section 112(f) are denied. Perhaps the Congress of the United States had such a situation in mind when it enacted Public Law 251 on October 31, 1951, 65 Stat. 733, c. 661, 26 U.S.C.A. §§ 112, and note, 113, 276, 3406 note, based on the Report of the Committee on Finance of the United States Senate, in Senate Report No. 1052, October 19, 1951 (similar in substance to House Report No. 798, August 7, 1951, both of which accompanied H.R. 3590), 82d Congress, 1st Session, Vol. 2, pages 2598, 2599, which recommended its passage, and included the following statement:

> "The bill eliminates the requirement of existing law that the taxpayer, in order to have the benefits of section 112(f), must trace the proceeds from the converted property into the replacement property."

However, the benefits of this change were retroactive only to January 1, 1951,

and therefore do not include plaintiff in the instant case.

I am constrained to the conclusion that the law was correctly applied in the Ovider case to facts practically identical with these and that its decision should be followed.

In view of the foregoing, summary judgment will be entered in favor of the defendant, and an order in conformity herewith shall be noticed for settlement by defendant for Monday, April 1, 1957.

An order may be filed sooner if plaintiff consents as to form, reserving to it its objections as to substance.