646

### KENNEBEC BOX & LUMBER CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 4317.

Circuit Court of Appeals, First Circuit.
June 14, 1948.

Before DOBIE (by special assignment), MAHONEY and WOODBURY, Circuit Judges.

Herbert E. Locke, of Augusta, Me. (Locke, Campbell, Reid & Hebert, of Augusta, Me., on the brief), for petitioner.

Irving I. Axelrad, Sp. Asst. to Atty. Gen. (Theron Lamarr Caudle, Asst. Atty. Gen. and Sewall Key and Lee A. Jackson, Sp. Assts. to Atty. Gen., on the brief), for the Commissioner.

DOBIE, Circuit Judge.

This case comes to us on a petition by Kennebec Box and Lumber Co., Inc., (hereinafter called taxpayer) to review a decision of the Tax Court of the United States, which decided that the sum of $57,028 of the proceeds received by taxpayer from fire insurance companies, when taxpayer's mill and part of its inventory were destroyed by fire, was not entitled to the non-recognition-of-gain provisions of Section 112(f) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 112(f). This section reads as follows:

"Sec. 112. Recognition of gain or loss.

\* \* \* \* \* \*

"(f) Involuntary conversions. If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain)."

The pertinent Treasury Regulation, 103, § 19.112(f)-1, provides:

"Sec. 19.112(f)-1. *Reinvestment of proceeds of involuntary conversion.*—In order to avail himself of the benefits of section 112(f) it is not sufficient for the taxpayer to show that subsequent to the receipt of money from a condemnation award he purchased other property similar or related in use. The taxpayer must trace the proceeds of the award into the payments for the property so purchased. It is not necessary that the proceeds be earmarked, but the taxpayer must be able to prove that the same were actually reinvested in such other property similar or related in use to the property converted. The benefits of section 112(f) cannot be extended to a taxpayer who does not purchase other property

similar or related in service or use, notwithstanding the fact that there was no other such property available for purchase."

The material facts, about which there is little or no dispute, may be briefly summarized. Taxpayer, a Maine corporation, was engaged during the taxable year, 1941, in the manufacture and sale of lumber, boxes and box shooks. A fire, on June 9, 1941, destroyed substantially all of the mill and part of the inventory, for which taxpayer recovered insurance proceeds totalling $118,552. The adjusted basis of the destroyed mill was $39,655 and that of the destroyed inventory $21,838, a total bases of $61,494.

Taxpayer purchased 987 shares of Augusta Lumber Company stock for $113,-454. This was all of the capital stock of this corporation except for three directors' qualifying shares.

Taxpayer, after the destruction of its mill, bought this Augusta stock upon concluding that it could neither rebuild its mill nor make a satisfactory purchase of another mill. The Augusta stock was bought by taxpayer from Kennebec Land Company which owned all of the taxpayer's stock. Taxpayer's business activities, however, were restricted to selling lumber which had not been destroyed by the fire and to finishing up operations at its portable mills.

Taxpayer, on July 28, 1941, opened a special bank account in which it deposited $105,152 of insurance proceeds. During the same month, however, it withdrew $33,730 of the insurance proceeds from this account to discharge a mortgage on the destroyed mill. Taxpayer also withdrew a total of $18,200 of insurance proceeds from the special bank account which it used for general purposes. In September, 1941, taxpayer borrowed $33,730 from Kennebec Land Company to restore that amount to the special account and, at various times in August and September, taxpayer made deposits in the special bank account from its own funds, in order to restore the $18,-200, which had been expended for general purposes. Thus by the end of September, 1941, the balance in the special bank account of $105,152 equaled the total amount of the deposits of insurance proceeds which

had been deposited in July, 1941. Taxpayer, on November 4, 1941, received the last payment of insurance in the amount of $13,400. This, too, was deposited in the special account so that the balance in the account thereafter was $118,552. On November 4, taxpayer withdrew $113,454 from the account and paid that sum to Kennebec for the stock of Augusta. After this withdrawal the balance in the account was $5,098.

Taxpayer earnestly urges upon us that it complied with the Treasury Regulation set out above which requires the taxpayer to "trace the proceeds of the award (the proceeds from the insurance) into the property so purchased" (the Augusta stock), and that the decision of the Tax Court is clearly erroneous because it is based upon artificial form and not real substance. In support of this contention, taxpayer points out that the insurance proceeds were deposited in a segregated, earmarked bank-account, without the commingling in that account of funds received from other sources; that the use of part of this money for the payment of the mortgage and for taxpayer's general purposes was purely of a temporary nature; that the sums so used were later replaced in the bank account; that, very shortly after the fire, taxpayer decided to take advantage of the nonrecognition statute by replacement of the property destroyed by the fire; that, finally taxpayer actually acquired control of a corporation owning similar property on the very day that taxpayer received the final payment of the insurance money from the insurers.

On the other hand, the Commissioner of Internal Revenue contends that, for many reasons, the decision of the Tax Court must be affirmed. The Commissioner insists that the taxpayer simply did not (as the non-recognition statute requires) "forthwith in good faith" expend the insurance proceeds "in the acquisition of other property similar or related in service or use;" that taxpayer, by its so called "earmarking" of the bank account did not comply with the provision of the Treasury Regulation requiring the taxpayer to "trace the proceeds of the award into the payments for the property so purchased." The use of

part of the proceeds for payment of the mortgage and for taxpayer's general purposes, states the Commissioner, was not in the nature of a temporary investment but, on the contrary, constituted final and irrevocable expenditures for purposes utterly apart from, and foreign to, the acquisition of such property similar or related in use (the Augusta stock).

Further, the Commissioner tells us, that the decided cases clearly support his contentions; that taxpayer did not even attempt to bring itself within the technical provisions for the establishment of a Replacement Fund; and that the decision below must be affirmed upon the well known doctrine of Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248.

The payment, from the insurance proceeds, of the mortgage and the use of part of the fund for taxpayer's general business purposes can hardly be regarded as temporary investments of portions of this fund. These payments were not "investments" at all in any normal sense of that word; they were, on the contrary, final and irrevocable expenditures of this money for purposes utterly foreign to the acquisition of property similar to, or related in use to, the property destroyed. Nor does it help taxpayer here that the money spent to pay off the mortgage, and for general business purposes, was subsequently replaced by the taxpayer.

Accordingly, taxpayer's contention is not supported by the cases that it cites and upon which it relies. Haberland v. Commissioner, 25 B.T.A. 1370; Commissioner v. Flushingside Realty Co., 2 Cir., 149 F.2d 572; Winter Realty & Construction Co. v. Commissioner, 2 Cir., 149 F.2d 567; Bandes v. Commissioner, 2 Cir., 69 F.2d 812.

Quite in point here are the words of Circuit Judge Augustus Hand in Vim Securities Corporation v. Commissioner, 2 Cir., 130 F.2d 106, 109:

"While it received payment of the award on October 9, 1936, it did not until January 29, 1937, begin to make payments which by any theory could be regarded as derived from the proceeds of 16 Concord Street, and it distributed the payments over a period of five months instead of making them at once. *In the meantime, so far as appears, it retained the proceeds of the award and may for all that we can know have used them for general business purposes.* It certainly did not comply with the Regulation providing that a taxpayer who seeks to come within the exception of Section 112 (f) 'must trace the proceeds of the award into the payments for the property so purchased' and 'must be able to prove that the proceeds were actually invested in such other property similar or related in use to the property condemned.' Treasury Regulations 94, Art. 112(f)-1." [Italics ours.]

And Circuit Judge Learned Hand, in Twinboro Corporation v. Commissioner, 2 Cir., 149 F.2d 574, 575, said:

"After every allowance which can properly be made for failure to cover obviously overlooked occasions, we remain in too much doubt to force the language so far from its literal meaning. Moreover, it should not be forgotten that we are dealing with an exemption."

Taxpayer contends that the statutory provisions are rather harsh and exacting and that it substantially (if not technically) complied with these provisions. The answer to this is that, whether these provisions are or are not harsh is for Congress, that these provisions set up conditions precedent for the deduction in question and taxpayer, whatever the general equities of the situation, has not substantially complied with the conditions set out in the statute. And it is not without importance here that the taxpayer neither sought nor obtained the Commissioner's permission for the "establishment of a replacement fund" under Section 19.112(f)-2 of Regulation 103. And see, in this connection, Winter Realty and Construction Co. v. Commissioner, 2 Cir., 149 F.2d 567, cert. den. 326 U.S. 754, 66 S.Ct. 92, 90 L.Ed. 452.

If further justification for affirmance of the Tax Court be needed (though we think it is not), such justification can here be found in the doctrine of Dobson v. Commissioner, 320 U.S. 489, at page 502, 64 S. Ct. 239, at 247, 88 L.Ed. 248, in which Mr. Justice Jackson stated:

"* * * when the (reviewing) court cannot separate the elements of a decision so as to identify a clear-cut mistake of law, the decision of the Tax Court must stand. * * * The Tax Court is informed by experience and kept current with tax evolution and needs by the volume and variety of its work."

In Commissioner of Internal Revenue v. Scottish American Investment Co., 323 U. S. 119, 125, 65 S.Ct. 169, 172, 89 L.Ed. 113, Mr. Justice Murphy said:

"Moreover, this case exemplifies one type of factual dispute where judicial abstinence should be pronounced. The decision as to the facts in this case, like analogous ones that preceded it, is of little value as precedent. The factual pattern is too decisive and too varied from case to case to warrant a great expenditure of appellate court energy on unravelling conflicting factual inferences. The skilled judgment of the Tax Court, which is the basic fact-finding and inference-making body, should thus be given wide range in such proceedings."

And right in point here are the words of Circuit Judge Allen, in Frischkorn Development Co. v. Commissioner, 6 Cir., 88 F.2d 1009:

"* * * it appearing that it is a question of fact whether the taxpayer has expended all of the money received for real property taken in condemnation proceedings in the purchase of other property similar and related in use * * *; and there being substantial evidence to support the findings of the Board of Tax Appeals * * * the order of the Board of Tax Appeals is affirmed."

The decision of The Tax Court of the United States is affirmed.

WOODBURY, Circuit Judge (concurring).

I am not sure that to hold the taxpayer liable as a matter of law for the deficiencies determined against it is not to exalt form over substance, or at least to emphasize form at the expense of substance, for if the taxpayer had merely adopted a different financing technique to arrive at its ultimate business end, it would undoubtedly have

been entitled to postpone recognition of its gain. But however this may be, I concur in the result reached by my associates since I believe that the rule of the Dobson case clearly applies.