**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**Frank W. BABCOCK, Respondent.**

**No. 15888.**

United States Court of Appeals
Ninth Circuit.

Sept. 23, 1958.

---

Charles K. Rice, Asst. Atty. Gen., Carolyn R. Just, Lee A. Jackson, Robert N. Anderson, Louis Foster, Attys., Dept. of Justice, Washington, D. C., for petitioner.

Austin Clapp, Woodside, Cal., for respondent.

Before STEPHENS, Chief Judge, and ORR and BARNES, Circuit Judges.

BARNES, Circuit Judge.

The Commissioner of Internal Revenue petitions for a review of a decision of the Tax Court of the United States in favor of respondent, Frank W. Babcock (hereinafter called taxpayer).

In October 1945 taxpayer purchased the Elk Metropole Hotel in Los Angeles for $89,600. $19,600 was paid in cash, and a purchase money mortgage for $70,000 was given which had been reduced to a balance due of $57,572.63 on November 9, 1949.

On that day the State of California condemned taxpayer's property, paying $207,323.34. The State paid off the balance of the mortgage to its holder, and the balance of the purchase price, $149,-750.71, to the taxpayer. On July 7, 1950, taxpayer bought the Sherwood Apartment Hotel in Los Angeles for $186,125.-00 and the whole $149,750.71 received by him was applied on this purchase price.[1]

In the notice of deficiency no issue was raised as to the requisite similarity of the property, but the Commissioner held that since only $186,125.00 was spent on the purchase, while the taxpayer had received $207,323.34, there was no similar investment within the meaning of the applicable statute and regulations, and a long term gain of $21,198.34, and a tax of $10,599.17, resulted.

Taxpayer argues that "his interest" in the property, in view of his lack of personal liability on the purchase price mortgage,[2] was the $149,750.71, which, having been fully reinvested in similar property and no part of the money received having not been invested, there resulted no presently recognizable gain.

The legal question in the Tax Court, and here, is whether the taxpayer realized a capital gain under the 1939 Internal Revenue Code § 112(f)[3] by reason of such condemnation of his property and his subsequent purchase of other property.

Section 112, Recognition of Gain or Loss, subdivision (f), in material part, reads as follows:

"*Involuntary Conversion.* If property (as a result of * * * an exercise of

---

1. In March 1950, an informal application to establish a "replacement fund" was made by taxpayer. While this was pending, the repurchase was made. Cf. Kennebec Box & Lumber Co. v. Commissioner of Internal Revenue, 1 Cir., 1948, 168 F.2d 646, 648.

2. Cal.Code Civ.Proc. §§ 580b, 580d.

3. 26 U.S.C. § 112 (I.R.C.1939).

the power of \* \* \* condemnation \* \* \*) is \* \* \* converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith \* \* \* expended in the acquisition of other [such] property \* \* \* no gain \* \* \* shall be recognized. \* \* \*" See also 26 U.S.C. § 113 [4] (I.R.C.1939) and Treasury Regulations 111.[5]

The Tax Court refused to approve the Commissioner's determination and held that no part of the condemnation award constituted a taxable gain.[6]

The Tax Court, if it followed the statute in so holding, was required to hold that "the property" which was condemned by the State of California was actually the same amount as taxpayer's equity in the property and did not include the amount paid by the State to the mortgage holder.

Such an interpretation apparently flies in the face of Treasury Regulations 111, § 29.112(f)-1, which provides in part:

"If \* \* \* the Government retains out of the award sufficient sums to satisfy liens \* \* \* and

---

4. "Sec. 113. Adjusted basis for determining gain or loss—

"(a) *Basis (unadjusted) of property.* The basis of property shall be the cost of such property; except that—

\* \* \* \* \*

"(5) *Property transmitted at death.* If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. \* \* \*

\* \* \* \* \*

"(9) *Involuntary conversion.* If the property was acquired, after February 28, 1913, as the result of a compulsory or involuntary conversion described in section 112(f) (1) or (2), the basis shall be the same as in the case of the property so converted, decreased in the amount of any money received by the taxpayer which was not expended in accordance with the provisions of law (applicable to the year in which such conversion was made) determining the taxable status of the gain or loss upon such conversion, and increased in the amount of gain or decreased in the amount of loss to the taxpayer recognized upon such conversion under the law applicable to the year in which such conversion was made. \* \* \*" 26 U.S.C. § 113 (1952 ed.).

5. "Sec. 29.112(f)–1. *Reinvestment of Proceeds of Involuntary Conversion.*— Upon the involuntary conversion of property described in section 112(f), no gain is recognized if the provisions of that section are complied with. If any part of the money received as a result of such an involuntary conversion is not expended in the manner provided in section 112 (f), the gain, if any, is recognized to the

extent of the money which is not so expended. \* \* \*

\* \* \* \* \*

"In order to avail himself of the benefits of section 112(f) it is not sufficient for the taxpayer to show that subsequent to the receipt of money from a condemnation award he purchased other property similar or related in use. The taxpayer must trace the proceeds of the award into the payments for the property so purchased. It is not necessary that the proceeds be earmarked, but the taxpayer must be able to prove that the same were actually reinvested in such other property similar or related in use to the property converted. The benefits of section 112(f) cannot be extended to a taxpayer who does not purchase other property similar or related in service or use, notwithstanding the fact that there was no other such property available for purchase.

"If, in a condemnation proceeding, the Government retains out of the award sufficient funds to satisfy liens (other than liens due to special assessments levied against the remaining portion of the plot or parcel of real estate affected for benefits accruing in connection with the condemnation) and mortgages against the property and itself pays the same, the amount so retained shall not be deducted from the gross award in determining the amount of the net award. An amount expended for replacement of an asset, in excess of the recovery for loss, represents a capital expenditure and is not a deductible loss for income tax purposes." (Treasury Regulations 111, promulgated under the Internal Revenue Code of 1939).

6. Two other issues were decided in favor of the government which are not before us on this appeal.

mortgages against the property and itself pays the same, the amount so retained shall not be deducted from the gross award in determining the amount of the net award * * *."

The Tax Court held that the rule enunciated in the Regulation could and should be distinguished, dependent upon whether the taxpayer had or had not assumed the mortgage. Here he had not, because of the provisions of California law. California Code of Civil Procedure, § 580b.

Taxpayer's counsel asserts there is a very good reason for the differentiation: Where the mortgagor is personally liable under his mortgage, payment by the government directly to the mortgagee relieves taxpayer of a liability; taxpayer thus has been benefited from such payment and this benefit has actually been received by him, but when there is no personal liability on the mortgagor because of a purchase price mortgage, payment of such mortgage by the condemning governmental authority benefits taxpayer not at all, and he has therefore received nothing beyond the net award paid to him for his equity.

The Commissioner relies primarily on three cases: Commissioner of Internal Revenue v. Fortee Properties, Inc., 2 Cir., 1954, 211 F.2d 915; Ovider Realty Co. v. Commissioner, 4 Cir., 1951, 193 F.2d 266; and, Kennebec Box & Lumber Co. v. Commissioner, 1 Cir., 1948, 168 F.2d 646.

The taxpayer frankly admits that the Fortee case is against him, but urges that it was wrongly decided; that the other two cases can be distinguished on the ground that in both there was a use of a part of the fund received in condemnation for taxpayer's general business purposes and hence that there could not be proved the requisite precise tracings of the money received by the taxpayer directly into the property he acquired.

Clearly, the Fortee opinion is squarely against taxpayer's position here. Judge Frank, in deciding it, relied on Crane v. Commissioner, 1947, 331 U.S. 1, 67 S.

Ct. 1047, 91 L.Ed. 1301, which interpreted the word "property" under § 113 of the 1939 Code, 26 U.S.C. § 113, and distinguished between "property" and "equity," reasoning that "property" could not be restricted to mean merely the owner's rights over and above encumbrances, and that "the reasoning and spirit of the [Crane] opinion are applicable here." 211 F.2d at page 916.

With this we cannot agree. In Crane, the property, originally obtained by devise, was voluntarily sold. Here a taxpayer is involuntarily forced to "sell" his mortgaged property. He has no personal liability to pay off the purchase price mortgage at any time. The state government pays it off directly to the mortgage holder. The taxpayer never has his hands on this mortgage money. He cannot prevent the payment by the state of the mortgage. Yet if he attempts to maintain the precise amount of his investment in comparable real estate, the Fortee rule would require him to make an *additional* investment equal to the total of the mortgage. Unless he desires to invest *more* than his equity he must find a piece of real estate exactly similar, not in price, but with precisely the same equity and at least as large a mortgage as the one taken in condemnation.

Such an interpretation of the regulation would require a preciseness not specified by the statute itself. The statute merely requires "property similar or related in service or use."

We must keep in mind that § 112 does not *exempt* from taxation those coming within it, but merely *delays* payment of taxable capital gains when the ordinary date of computation (date of sale) is involuntarily, and perhaps inequitably, forced upon the taxpayer by independent action of a sovereign authority. The purpose of § 112 was to aid the taxpayer where he in good faith quickly transforms everything he received from the act of condemnation into property "similar or related in * * * use." We think the taxpayer has done that here, and we disagree with the Fortee opinion to the contrary. We do not think its re-

liance on Crane v. Commissioner, supra, is justified.

The Ovider and Kennebec cases, supra, involve a co-mingling and use of the condemnation proceeds for business purposes, even though temporarily, and both recite that total payments were made to the taxpayer—*i. e.*, the taxpayer was paid the amount of his equity plus the mortgage, contrary to the facts of the instant case.

Furthermore, both the Ovider and Kennebec cases sustained the respective decisions of the Tax Court, and the importance of that fact is emphasized in Kennebec where the court said:

"If further justification for affirmance of the Tax Court be needed (though we think it is not), such justification can here be found in the doctrine of Dobson v. Commissioner, 320 U.S. 489, at page 502, 64 S.Ct. 239, at 247, 88 L.Ed. 248, in which Mr. Justice Jackson stated:

"'* * * when the (reviewing) court cannot separate the elements of a decision so as to identify a clear-cut mistake of law, the decision of the Tax Court must stand. * * * The Tax Court is informed by experience and kept current with tax evolution and needs by the volume and variety of its work'." 168 F.2d at pages 648, 649.

And see the quotation in the Kennebec case from Commissioner of Internal Revenue v. Scottish American Investment Co., 1944, 323 U.S. 119, 65 S.Ct. 169, 89 L.Ed. 113, as to the reliance courts should place on the Tax Court expertise, 168 F.2d at 649, and the concurrence of Judge Woodbury in Kennebec where he relies entirely upon the Dobson case quoted above. 168 F.2d at page 649.

We can agree with Judge Dobie in the Kennebec decision that

"* * * right in point here are the words of Circuit Judge Allen, in Frischkorn Development Co. v. Commissioner, 6 Cir., 88 F.2d 1009:

"'* * * it appearing that it is a question of fact whether the tax-payer *has expended all of the money received for real property taken in condemnation proceedings* in the purchase of other property similar and related in use * * * ; and there being substantial evidence to support the findings of the Board of Tax Appeals * * * the order of the Board of Tax Appeals is affirmed'." Ibid. [Emphasis added.]

■ The Tax Court's interpretation of what constitutes "property" under the facts of this case seems to us a reasonable exercise of its expertise on such matters. "Property" can be less than complete legal and equitable title and may be "limited" by the facts of the case. Commissioner of Internal Revenue v. Moore, 9 Cir., 1953, 207 F.2d 265.

The decision of the Tax Court is affirmed.