L. A. BEEGHLY AND MABEL L. BEEGHLY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73163.    Filed April 24, 1961.

*James E. Mitchell, Esq.*, for the petitioners.
*Frank W. Hardy, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency in income tax of the petitioners of $2,185.74 for 1953 and one of $2,864.15 for 1954. The only assignment of error is as follows:

The Commissioner erred in holding that the proceeds of the settlement with petitioners made by the Turnpike Commission on March 14, 1953, should be

allocated entirely to capital gain; and in refusing to apportion $16,000 of said proceeds to damages to the residue of the taxpayers' lands, which remained after the appropriation proceedings were finished.

The facts of record have been introduced by a stipulation which is adopted as the findings of fact.

The petitioners, husband and wife, filed joint income tax returns for 1953 and 1954 with the district director of internal revenue, Cleveland, Ohio. They acquired, by purchase, on July 18, 1950, 294½ acres of Ohio farmlands and appurtenant buildings. The Ohio Turnpike Commission, under threat of condemnation, negotiated with Beeghly in 1953 for a right-of-way across a portion of his farm. The land ultimately acquired by the commission cut diagonally across a 150-acre portion of the farm, dividing that portion into two parts. The local appraisers for the commission, after viewing the farm, submitted their recommendation to the commission that it pay a total of $20,500 for the desired right-of-way. The appraisers in their recommendation showed that their figure included $2,700 for the land taken and $17,800 for damage to the portion of the farm not taken.

The land agent of the commission subsequently contacted Beeghly for the purpose of negotiating an offer of sale from Beeghly to the commission. He indicated to Beeghly that the commission was willing to pay $20,350 to acquire the right-of-way. The subject of damages arose during the discussion, and the agent told Beeghly that the commission arrived at the $20,350 figure by including $2,500 for land taken, $16,000 for damages to the remaining property and $1,850 as payment for prompt settlement and possession. Beeghly was willing to accept $20,350 for the right-of-way. The agent then submitted to Beeghly a commission form entitled "Offer and Contract for Sale of Real Estate," which Beeghly executed upon receipt of $10. The contract was then submitted to the commission for acceptance.

The contract included the following:

The consideration for seller's offer to enter into this contract is $10.00, the receipt of which is hereby acknowledged by seller.

1. The commission shall, upon execution by seller of all the terms and provisions in this contract required of seller, pay to seller the additional sum of $20,350.00, of which $1,850.00 is consideration for seller's promptness in making this contract and for the granting in [paragraph] 7 of the right of possession and use at the time therein specified.

The time specified in paragraph 7 was April 15, 1953.

This document did not provide for an allocation of the contract amount between compensation for land taken and damage to remaining land, and Beeghly did not request that such an allocation be included in the contract. The contract was accepted by the commission and Beeghly and his wife executed a warranty deed conveying the property to the State of Ohio.

The commission sought an additional 10.5 acres of Beeghly's land as a site for a maintenance garage with access to the nearest county highway. The Beeghlys delivered a deed for this property to the State of Ohio and received a lump-sum payment of $3,590, noted on the commission records as payment for land taken. The construction of the turnpike resulted in damage to the farm drainage tiling, which damage was noted on the commission records to be $2,050, a part of the $3,590 payment. Two easements were also obtained by the commission from Beeghly, for which $550 was paid.

The total amount received by the Beeghlys was $24,500 whereas the stipulated basis for the land actually taken was $3,500.19. It seems obvious that a large part of the amount received by the Beeghlys from the commission for their 33 acres of land was for damage to the larger amount of land not taken rather than for the value of the small amount of land actually taken. The only issue raised by the pleadings is whether as much as $16,000 of the amount received was paid and received for damage to the larger part of the farm not taken and should adjust the basis of that land. The Commissioner's contention is that nothing was paid for damage to the land not purchased. The stipulated facts do not show clearly that there was any meeting of the minds of the buyer and seller on this subject, although it was discussed in the negotiations. It is reasonably clear that severe damage was done to the retained land and that the buyer regarded at least $16,000 as having been paid on that account. It also seems fair to believe under all of the circumstances that Beeghly accepted at least this amount as payment for damages. That would leave $8,500 as payment for recently acquired land having a basis of $3,500.19. The conclusion has been reached, after due consideration of all the stipulated facts, that $16,000 was paid for damages rather than for the land taken. This decides the only issue raised by the pleadings.

*Decision will be entered under Rule 50.*