ARCH B. JOHNSTON AND JEAN HALE JOHNSTON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4917–62. Filed August 13, 1964.

*Norman A. Peil, Jr.,* for the petitioners.
*Dennis C. DeBerry,* for the respondent.

WITHEY, *Judge:* A deficiency in the income tax of petitioners for the taxable year 1959 has been determined by respondent in the amount of $4,655.74. The only issue presented is whether petitioners may report as capital gains only that portion of a lump-sum condemnation award by the Commonwealth of Pennsylvania which represents claimed severance damages in the State's condemnation of a portion only of their property.

### FINDINGS OF FACT

The stipulated facts are found.

Petitioners are husband and wife residing at Camels Hump Farm, Bethlehem, Pa. Their joint Federal income tax return for the taxable year 1959 was prepared on the cash receipts and disbursements basis and was timely filed with the district director of internal revenue at Philadelphia, Pa.

The income tax return reflected the receipt by petitioners in 1959 of the sum of $36,000 in damages received from the Pennsylvania Highway Department. A deduction for $2,125.57 representing expenses in connection with the obtaining of the proceeds was claimed. The cost basis of the entire tract of $4,441.88, together with the adjusted basis of the improvements on the tract amounting to $16,086,29, was deducted from the proceeds. A resulting profit of $13,346.26 was reported as a long-term capital gain.

Petitioner, Jean Hale Johnston, acquired a tract of land comprising 92.053 acres in in Bethlehem Township, Northampton County, Pa., in August 1943 for $4,441.88. The tract was located a few miles north of the city of Bethlehem, Pa., and consisted of farmland and woodland. No disposition of any part of this land was made by petitioners from the date of purchase to the time of the condemnation more fully referred to hereinafter. Improvements made on the tract to the time of condemnation had a cost basis of $24,187.28; depreciation allowed or allowable accumulated to August 7, 1959, was $8,100.99.

On September 18 and October 8, 1952, the Department of Highways of the State of Pennsylvania, in connection with the construction of Route 772, section 3 (a four-lane limited access highway known as U.S. Route 22), took and appropriated by condemnation a total of 6.6 acres from the tract referred to above. The condemnation was effected at that time by the Governor of the Commonwealth signing the plans for the improvement for the construction of the highway. No deed was executed.

The parcel of land condemned was 1,760 feet in length and 120 feet in width running across the tract from east to west in such a manner as to sever the tract into two parcels, one north and one south of the highway. There is no direct access to the highway from either parcel although there is access between the parcels by way of a dirt road running under the highway. The northern portion contained a 2½-story frame dwelling, a detached garage, and three large barns. Slightly to the south of the dwelling was a small stone hunting lodge. The land at the southern, northern, and eastern ends is bounded by roadways; the western end borders on an adjoining farm. From the southern boundary the land slopes gently downward toward a stream called Monocacy Creek and from the creek to the northern boundary there is a gentle upgrade. The strip of land condemned lies just north of the creek and between the creek and the lodge and dwelling.

Prior to the condemnation the land was farmed and the dwelling rented. The hunting and fishing lodge was used by petitioners and the stream was stocked with trout for fishing. Johnston maintained a skeet shoot at the southern end of the property facing north and he put out small game in the fields for hunting purposes.

The entire property was damaged by the taking. In addition to the severance of the tract into two pieces by the highway, thus resulting in the separation of the stone lodge and other dwellings from the creek, the proximity of the heavily traveled highway which was constructed adversely affected the dwelling for residential purposes.

Between the time of the condemnation and December 1956 petitioners were unsuccessful in negotiating with the Pennsylvania Department of Highways in respect to the damages which they had sustained and at that time attorney John F. Oldt was retained to represent them in connection with their claim.

In May 1957, petitioners petitioned the Court of Quarter Sessions in and for the County of Northampton, Pa., for the appointment of a Board of View to assess damages from the condemnation. The complaint filed before the Board of View specifically listed the items that petitioners were contending constituted their damages, among which items were the value of the land actually taken and the severance damage to the remaining land.

In the Board of View proceedings, Mark B. Yotter was the expert appraiser for the petitioners and testified that the total damages to the land involved including severance damage resulting from the condemnation were $48,986.

In the Board of View proceedings, Roger Connors was the expert appraiser for the Commonwealth of Pennsylvania and testified that the total damages to the land involved resulting from the condemnation were $32,130.   He also specifically broke down the total damages into the various elements making up this total as follows:

Land taken, 6.46 acres at $700 per acre_____ $4, 522
Severance damages to remaining land and structures thereon_____ 27, 608

32, 130

Both parties were present by respective counsel at the Board of View proceedings and were thus aware of the methods by which the damages were determined by the expert witness and also of the elements entering into such damages including the portions considered to be for land actually taken and and the portions considered to be for severance damages to the remaining tract and its improvements.

The Board of View issued a report in which it reviewed the evidence presented before it by the respective parties including the elements of damage making up the total damage to the property involved.   These elements of damage were stated in terms of the value of the land actually taken by the condemnation and the severance damage to the remaining tract.   The board assessed the total of such damages in a lump sum to petitioners at $36,500.

An appeal of the Board of View's award was made by the Department of Highways.

Prior to the trial on the appeal, the parties agreed to settle the claim for damages for $36,000.

The damages finally agreed to by the parties after the appeal from the findings of the Board of View did not include any elements of damage other than the land taken and severance damages, nor did it include an element of interest.

In the negotiations between counsel for the respective parties the negotiations leading to the settlement were based largely upon the severance damages to the remaining tract.   At that time, both parties through counsel were fully aware of the fact that the expert appraisers for both sides had attributed the major portion of the damages sustained to those affecting the remaining portion of the tract.

Sales of comparable real estate in the area about the time of this transaction indicate that land and improvements thereon did not command a price in excess of $632 per acre.

Counsel for the parties filed a stipulation of settlement in the case in the Court of Common Pleas of Northampton County providing

that "the above-entitled case shall be settled and ended upon the payment by Defendant to the Plaintiff, JEAN HALE JOHNSTON, of the sum of Thirty-Six Thousand ($36,000.00) Dollars" pursuant to delivery of the Commonwealth's check in that amount to counsel for Jean Hale Johnston.

Pennsylvania law fixes the measure of damages in eminent domain cases as the difference between the market value of the property immediately prior to and as unaffected by the taking and the market value of such property immediately after and as affected by the taking. Particular items of damage may be considered as facts but their specific value may not be given and the award must be made as one total sum.

### ULTIMATE FINDING

The ultimate amount paid petitioners by the State of Pennsylvania included $5,000 representing the purchase price of 6.6 acres of land actually taken upon condemnation and $31,000 representing severance damages to petitioners' lands and improvements not so taken.

The petitioners did not by deed convey any of their property to the State of Pennsylvania.

### OPINION

There is here presented the question whether, on the involuntary conversion of 6.6 acres of petitioners' land by the State of Pennsylvania through its power of condemnation, petitioners have received an amount from the State which represents only payment for the actual land taken as respondent contends or whether the major portion of the payment represents payment by the State for nontaxable severance damages to petitioners' remaining property as contended by petitioners. Respondent rests his case almost entirely upon the fact that under Pennsylvania case law, *Brown* v. *Commonwealth*, 399 Pa. 156 (1960), 159 A. 2d 881, and *Sgarlet Estate* v. *Commonwealth*, 398 Pa. 406 (1960), 158 A. 2d 541, an award for damages on condemnation may be made only in a lump sum representing a value placed upon the land actually taken. In doing so he cites *Marshall C. Allaben*, 35 B.T.A. 327 (1937), and *Lapham* v. *United States*, 178 F. 2d 994 (C.A. 2, 1950), for the proposition the State law is controlling and determinative of the issue here presented. We did not agree in *L. A. Beeghly*, 36 T.C. 154 (1961), and we do not agree here.

That tax issues are to be decided upon the basis of substance rather than form is so fundamental as to require no citation of authority. We think the fact that the award in this case was made in a lump sum under State law was mere form and that the substance of what actually occurred is amply shown by the negotiations of the parties

and the factors clearly taken into consideration by the Board of View in arriving at its award of $36,500. There was no after-the-event unilateral allocation of damages between severance damage and value of the land actually taken here. From the beginning of negotiations through the hearing held by the Board of View and in the negotiations between petitioners and the State in arriving at the final settlement figure of $36,000, severance damages were clearly the major issue. There had been many sales of comparable property at a figure which appears to have caused the negotiators to have no disagreement with respect to the State appraiser's figure of $700 per acre given to the Board of View. In fact the authorization by State law, see *Brown* v. *Commonwealth, supra,* and *Sgarlet Estate* v. *Commonwealth, supra,* of the use in fixing the amount of the award of the so-called before-and-after formula indicates strongly that the State intended, upon the signing of the condemnation order by its Governor, and throughout the negotiations leading to the award and the settlement of the appeal therefrom, to pay an amount as damages to petitioners' remaining lands.

In *Marshall C. Allaben, supra,* and *Lapham* v. *United States, supra,* there had been in each case an actual sale of the taxpayer's property to a condemning authority with no showing of fact that the sale price was not, in substance, a purchase price for land acquired by the governmental authority. In this, those cases are clearly distinguishable from the one before us. In fact it was indicated in *Marshall C. Allaben, supra,* that condemnation presents a different question on this issue. We think this case is in principle more nearly comparable to *L. A. Beeghly, supra,* although stronger for the taxpayer on its facts.

The allocation by petitioners in their return of $13,346.26 of the total condemnation award to taxable capital gain is in accordance with the substance of the transaction before us. Under these facts not more than that amount was paid by the State for the 6.6 acres of land taken and the evidence amply substantiates that the remainder was paid for the difference in value of petitioners' remaining land and improvements from its value before the taking and unaffected by it.

Respondent raises no issue with respect to petitioners' offset against the total award of the amount of $2,125.57 which represents expenses of obtaining the award.

*Decision will be entered for the petitioners.*