LAMMOT duPONT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent LAMMOT duPONT AND MARGARET S. duPONT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Du Pont v. Commissioner
Docket Nos. 7315-76, 7318-76.
United States Tax Court
T.C. Memo 1978-16; 1978 Tax Ct. Memo LEXIS 499; 37 T.C.M. (CCH) 115; T.C.M. (RIA) 780016; January 17, 1978, Filed John R. Kline, for the petitioners. Craig D. Platz, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: In these consolidated cases the respondent determined a deficiency of $7,596.61 in Lammot duPont's Federal gift tax for the quarter ended March 31, 1973, and a deficiency of $43,448.07 in petitioners' Federal income tax for the year 1973. The two issues presented for decision involve circumstances related to the divorce of Lammot duPont and Betty duPont on January 17, 1973. The issues are: 1. Whether the transfer of ownership of three life insurance policies by Betty duPont to her daughters, Susan and Anne duPont, was a gift by her, as she reported it, or whether *501 it was consideration to Lammot in settlement of their property rights incident to divorce which constituted an indirect gift by him to his two daughters for gift tax purposes. 2. Whether the transfers of ranch properties from Lammot duPont to Betty duPont involved in a property settlement agreement were made before or after their divorce. If the transfers occurred upon the execution of their property settlement agreement prior to their divorce, the provisions of sections 267 and 1239, Internal Revenue Code of 1954, [1] apply, thus precluding recognition of losses and requiring ordinary income treatment of the gains realized on the transfers as having been made between related parties. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are so found. Petitioners Lammot duPont and Margaret S. duPont are husband and wife who were legal residents of Colorado when they filed their petition in Docket No. 7318-76. Lammot duPont (hereinafter referred to individually as the petitioner) was a legal resident of Colorado *502 when he filed his petition in Docket No. 7315-76. Mr. and Mrs. duPont filed a timely joint Federal income tax return for the year 1973. Betty G. duPont, the petitioner's former wife, filed a timely Federal gift tax return (Form 709) for the calendar quarter ended March 31, 1973. The petitioner did not file a Federal gift tax return for that quarter. On her gift tax return Betty duPont reported gifts of Northwestern National Life Insurance Company policies numbered B1289865, B876587, and B1073419 to her daughters, Susan and Anne duPont. Petitioner and Betty G. duPont were divorced on January 17, 1973, by a decree entered by the District Court of the Second Judicial District of the State of Montana in and for the County of Silver Bow, civil action number 58545. The divorce decree provides, in part, as follows: This cause having come on to be heard by this Court the 17th day of January, 1973, on Plaintiff's complaint for divorce and property settlement, Plaintiff appeared in open court with her counsel, KENDRICK SMITH, ESQ., of Butte, Montana, the Defendant appearing by his counsel, MICHAEL J. HUGHES, ESQ., of Helena, Montana, and said Michael J. Hughes having announced *503 in open Court that he did not desire to make any appearance other than the Motions filed on behalf of the Defendant on September 29, 1972, which were overruled by Order of this Court dated December 1, 1972, and that he refused to answer or further plead herein, and waived any further time within which so to do, the Court, on motion of said counsel for Plaintiff, duly entered the default of Defendant. The Plaintiff was thereupon duly sworn and testified and presented evidence, both oral and documentary, all of the evidence, both testimonial and documentary, being free from legal exception or objection. The Court, having considered the evidence and now being fully advised, makes the following FINDINGS OF FACT, CONCLUSIONS OF LAW, and DECREE OF DIVORCE AND PROPERTY SETTLEMENT, as follows, to-wit: FINDINGS OF FACT
* * *
2. That Plaintiff and Defendant were intermarried at Great Neck, Long Island, New York, on the 20th day of January, 1955, and ever since have been and now are husband and wife. 3. That two children have been born the issue of said marriage, to-wit: SUSAN duPont - born October 28, 1956 ANNE duPont - born September 14, 1958 * * *
6. That the *504 Defendant is an able-bodied man and endowed with extensive resources, money and property, and has made full disclosure thereof to Plaintiff. That on the 16th day of January, 1973, the parties entered into a separation and property settlement agreement in which they adjusted and settled by agreement between them all matters concerning their respective property rights, the support of the Plaintiff, and the custody, support, maintenance and education of the children. That said agreement was not made in consideration of divorce, nor for the purpose of encouraging, permitting, assisting or preventing a divorce between the parties. That the Plaintiff and the Defendant entered into said agreement freely and voluntarily, and with full knowledge of each other's financial circumstances. That under all the circumstances said agreement is fair, equitable and just, and that the same should be and is approved, adopted and confirmed, but that notwithstanding such approval, adoption and confirmation of said agreement, the same should not be merged herein, but should survive and be binding on the parties. * * *
CONCLUSIONS OF LAW
The Court adopts as Conclusions of Law each and all *505 of the foregoing Findings of Fact. DECREE
NOW, THEREFORE, on Motion of said Kendrick Smith, Esq., of attorneys for the Plaintiff, and upon the foregoing Findings of Fact and Conclusions of Law, and upon the whole record herein: IT IS ORDERED, ADJUDGED and DECREED and this does ORDER, ADJUDGE and DECREE: 1. That the bonds of matrimony heretofore existing between the Plaintiff, BETTY G. duPONT, and the Defendant, LAMMOT duPONT, sometimes written LAMMOT duPONT, III, be and the same are hereby dissolved, and thatPlaintiff is granted an absolute divorce from the Defendant effective forthwith. 2. That the separation and property settlement agreement of the parties entered into on January 16th, 1973, is under all the circumstances fair, equitable and just; that the parties entered into the same freely and voluntarily, and with full knowledge of each other's financial circumstances; that the aforesaid agreement be and the same is hereby approved, adopted and confirmed; that because each of the parties has a duplicate executed original of said agreement dated January 16th, 1973, and because support and alimony have been secured by an irrevocable trust, a copy of which is attached *506 to each of said duplicate originals, the Court finds it unnecessary to attach a copy of said Agreement to this Decree; that the parties be and they are hereby ordered and directed to comply with all of the provisions of said Agreement; that all the property rights of the parties are hereby fixed as provided in said Agreement; that the right of Plaintiff and her attorneys to attorneys' fees are hereby fixed as provided in said Agreement; that the measure of the Plaintiff's right to support, maintenance and alimony, past, present and future, is hereby fixed as provided in said Agreement; that in the enforcement of this Decree, either of the parties may refer to and use an executed duplicate original of said Agreement dated the 16th day of January, 1973; and that notwithstanding the approval, adoption and confirmation of said Agreement dated January 16th, 1973 by and in this Decree, the same shall not be merged herein, but shall survive and be binding on the parties. 3. That the custody of the minor daughters of the parties hereto shall be subject to the individual wishes of each of said daughters; that the Defendant shall pay for the support, maintenance and education of said minor *507 children until each attains the age of 21 or sooner dies, all as provided in said Agreement dated January 16th, 1973. DONE and DATED this 17th day of January, 1973. JAMES D. FREEBOURN DISTRICT JUDGE In the divorce proceedings the petitioner was represented by Michael J. "Mac" Hughes and Betty duPont was represented by Kendrick Smith. Hughes and Smith worked together in drafting the District Court's decree of divorce and its underlying findings of fact and conclusions of law. They also worked together in drafting a property settlement agreement between the petitioner and Betty duPont. In a letter dated September 5, 1972, John R. Kline, in his capacity as tax counsel, advised the petitioner relative to his contemplated transfers of real and personal property, comprising the Little Valley Ranch, to Betty duPont, as follows: I should point out that Section 267 I.R.C., prevents losses on transactions between related parties. If you want to chance taking the loss [relative to transfer of the land and improvements], Section 267 I.R.C., can be avoided by foregoing a separation agreement and including an order for the transfer *508 of the properties in the divorce decree. The instruments of transfer could, of course, be prepared in advance and held by Mac pending the decree. I am recommending that procedure to Mac anyway, as Section 1239 I.R.C. disallows capital gain or 1231 gain treatment to depreciable assets if they are transferred between husband and wife and as cattle, machinery, fences, etc., are to be transferred, to be safe the transfers should take place after the divorce pursuant to the decree. This will insure that the I.R.S. will not raise a question as to a transfer between husband and wife. Sometime later in 1972 a proposed preliminary draft of a property settlement agreement was considered and reviewed by the petitioner and Betty duPont and their respective counsel. It provided, in part, as follows: it is hereby specifically understood and agreed that this Agreement shall not become effective until and unless a Decree of Divorce is entered in said [referenced divorce] action; thereupon this Agreement shall be in full force. Any signing of this Agreement prior to the time of an entry of the Decree of Divorce shall not affect the foregoing provisions. Subsequent *509 to the effective date of this Agreement (upon approval in any Divorce Decree) * * *; Subject to the provisions of this Agreement and the effective date thereof, * * *; Subject to the entry of a Decree of Divorce, it is specifically agreed that the payments provided for in said Trust Agreement * * * shall be alimony payments payable by husband to wife * * *; It is agreed that as a full and complete property settlement, husband shall transfer to wife the following property * * * upon the effective date of this agreement, * * *; It is agreed that all said documents [transferring title] have been inspected and approved and that the Deed shall be filed for record promptly after date of the effectiveness of this Agreement. Mr. duPont agrees to pay all * * * taxes required in any way by this agreement or by any provisions of the divorce decree if and when such divorce decree is entered. * * *; In the event that the parties should not be divorced by April 1, 1973, either party hereto may, by notice to that effect given to the other party, terminate this Agreement. * * * The limiting provisions contained in the draft of the property settlement agreement were deleted from *510 the final property settlement agreement executed by the petitioner and Betty duPont, except for the dispositive provisions which remained in essence the same. The limiting provisions were deleted from the final agreement because counsel feared that the agreement might be deemed invalid and void as an agreement made in contemplation of divorce, whereas a property settlement agreement made concurrent with the divorce and with the approval by the State District Court of the terms of the agreement would be valid under Montana law. A property settlement agreement dated January 16, 1973, was executed by petitioner on January 16, 1973, and by Betty duPont on January 17, 1973, prior to the divorce hearing and the entry of the divorce decree. Both parties entered into the property settlement agreement freely and voluntarily. The property settlement agreement reads in pertinent part as follows: AGREEMENT
* * *
THIS AGREEMENT, made and entered into this 16th day of January, 1973, by and between LAMMOT duPONT, III, sometimes called LAMMOT duPONT, a resident of Avon, Montana, but whose current post office address is 2650 North 1st Street, Apartment No. 3, Grand Junction, Colorado *511 81501, herein called the Husband, and BETTY G. duPONT, residing at, and whose post office address is, Little Valley Ranch, Avon, Montana 59713, herein called the Wife, WITNESSETH:
WHEREAS, the parties were married on the 20th day of January, 1955, at Great Neck, Long Island, New York, and ever since have been and now are husband and wife; and WHEREAS, there are two minor children born of said marriage, namely: SUSAN duPONT, who was born on October 28, 1956, and ANNE duPONT, who was born on September 14, 1958, the children being sometimes herein collectively called the Children; and WHEREAS, unhappy disputes and irreconcilable differences have arisen between the parties, as a result of which they have heretofore separated and now are living apart from each other, and it is their intention to live apart for the rest of their lives; and WHEREAS, they desire to adjust and settle by agreement all matters concerning their respective property rights, the support of the Wife, and the custody, support, maintenance, and education of these children; and WHEREAS, an action is now pending in the District Court of the Second Judicial District of the State of Montana, in and for the *512 County of Silver Bow, being Cause No. 58545 on the register of civil actions of said District Court, wherein the Wife is plaintiff and the Husband is defendant, and wherein the Wife prays for a divorce from the Husband, such action having been commenced on the 11th day of September, 1972, but this agreement is not made in consideration of divorce nor for the purpose of encouraging, permitting, assisting or preventing divorce; and WHEREAS, the parties have been fully, separately and independently advised of their respective legal rights and obligations by counsel of their own selection, and the Husband has made full disclosure to the Wife of his property and income; and WHEREAS, both parties fully understand all the provisions of this agreement, and believe them to be fair, just, adequate and reasonable, and consonant with the best interests and welfare of the Children, and accordingly accept such provisions freely and voluntarily; NOW, THEREFORE, in consideration of the premises and of the mutual promises, covenants and undertakings hereinafter set forth, and in further consideration of the payments to be made from time to time hereafter by the Husband to the Wife pursuant to *513 the provisions of Clause 8 hereof, and for other good and valuable considerations, the parties agree: 1. SEPARATION PERMANENT. The parties may and shall continue to live apart for the rest of their lives. Each shall be free from interference, direct or indirect, by the other as fully as though unmarried. Each may for his or her separate benefit, engage in any employment, business or profession he or she may choose. 2. NO INDEBTEDNESS. The parties acknowledge and agree that, except as herein provided, neither is indebted to the other. 3. DIVISION OF PERSONAL EFFECTS. The parties acknowledge that they have heretofore divided up between them to their mutual satisfaction all their furniture, furnishings, works of art, household goods, personal effects and other items of tangible personal property of a personal or sentimental nature. Henceforth each of them shall own, have and enjoy, independently of any claim or right of the other, all such items of personal property of every kind, now or hereafter owned or held by him or her, with full power to dispose of the same as fully and effectually, in all respects and for all purposes, as if he or she were unmarried. *514 4. PROPERTY SETTLEMENT. The parties hereto have jointly owned and operated a cattle ranch in Powell County, Montana, known as the Little Valley Ranch. The following disposition shall be made of this property, both real and personal: (a) The Husband shall forthwith execute, acknowledge and deliver to the Wife a deed in due form for recording conveying to the Wife all of his right, title, estate and interest of, in and to the following described real property, to-wit: [Real property described.] (b) The Husband shall forthwith execute and deliver to the Wife an assignment of all his right, title and interest in and to State Forest Land Use Authorization L-1063 issued by the Montana Department of Natural Resources and Conservation, Division of Forestry, coverning all of Section 16, Township 11 North, Range 9 West, M.P.M., in Powell County, Montana; (c) The Husband shall forthwith execute and deliver to the Wife an assignment of the livestock brands "LVR" and "ZJ"; (d) The Husband shall forthwith execute, acknowledge and deliver to the Wife a Bill of Sale (and such other documents as may be necessary to effectively transfer title as the Wife may request) covering the *515 following farm vehicles, machinery, and equipment, to-wit: [Personal property described.] It is agreed that the Wife and her Counsel have heretofore inspected and approved the instruments of conveyance hereinabove in this Clause 4 referred to. 5. INSURANCE. Northwestern National Life Insurance Company has heretofore issued certain policies of insurance on the Husband's life, viz: Policy No. B876587 issued August 15, 1956 in the sum of $50,000.00, having a cash value on September 15, 1972, of $9,828.55 and a quarterly premium payable to age 90 of $184.00; Policy No. B1-073-419 issued October 18, 1963, in the sum of $200,000.00, having a cash value on September 18, 1972, of $18,160.65, and a quarterly premium payable for life of $808.50; and Policy No. B1-289-865 issued August 14, 1969, in the sum of $200,000.00, having a cash value on September 14, 1972 of $8,668.67 and a quarterly premium payable to age 85 of $1,046.85. The Wife was the owner and beneficiary of each of said policies. As a part of this property settlement agreement, the Wife has heretofore assigned ownership of said policies to the Children and caused the Children to be designated as beneficiaries thereof. *516 The Husband shall pay all premiums on said policies falling due on or after January 1, 1973, so long as he lives, but may do so by making gifts to the Children with which to pay such premiums. The Husband shall pay all gift taxes incident to the transfer of ownership of said policies from the Wife to the Children, the parties agreeing, however, to file a joint return with respect thereto. It is specifically agreed that the provisions contained in this Paragraph 5 are for the benefit of the Children and not for the benefit of the Wife, and shall be enforceable only by the Children. 6. CUSTODY OF CHILDREN. Anne duPont, being of the age of 14, and Susan duPont, being of the age of 16, it is agreed that the custody of each of said daughters shall be subject to the individual wishes of each of said daughters. 7. SUPPORT OF CHILDREN. The Husband has heretofore set up a separate Trust for each of the Children with Wilmington Trust Company, of Wilmington, Delaware, as follows: Trust No. 6827, dated October 25, 1963 for Susan duPont
Income is accumulated and added to principal until Susan is 21, at which time all of the accumulated income and principal assets are *517 distributed outright to her. The current value of this trust is approximately $100,000 and the annual income approximates $3,000. Trust No. 6828, dated October 25, 1963 for Anne duPont
Income is accumulated and added to principal until Anne is 21, at which time all of the accumulated income and principal assets are distributed outright to her. The current value of this trust is approximately $100,000 and the annual income approximates $3,000. The Wife agrees that the support of the Children after they attain the age of 21 is sufficiently provided for by said two (2) Trust Agreements and that a certified copy of each thereof has been supplied to the Wife.The Husband agrees to pay for the support, maintenance and education of the Children until each attains the age of 21 or sooner dies. The Husband further agrees to pay for all college and university education and expenses, including any graduate work, for each of the Children after they attain the age of 21 to the extent each desires such college and university training, provided, however, that the Husband's obligation in this respect shall terminate as to each girl as she attains the age of 25 or upon the prior death *518 of the Husband.It is further agreed that the Husband shall be entitled to claim both of the Children as exemptions on his federal and state income tax returns for 1973 and subsequent years and that the Wife shall not claim them or either of them as exemptions even though they may be residing with her. 8. SUPPORT AND ALIMONY FOR WIFE--TRUST AS SECURITY. The Husband, for himself, his heirs, executors, administrators and assigns, agrees to pay to the Wife for her support and maintenance, and as alimony in the event of divorce, the sum of Fifty Thousand Dollars ($50,000.00) per year commencing with the year 1973, in quarterly installments of Twelve Thousand Five Hundred Dollars ($12,500.00), said payments to continue for so long as the Wife lives, irrespective of whether she remarries or the Husband predeceases her; provided, however, that the Husband's obligation to make such quarterly payments to the Wife shall terminate with the last quarterly payment due before the death of the Wife. In order to secure to the Wife the due performance by the Husband of the foregoing provisions of this Clause 8, the Husband, as the Trustor therein named, and Wilmington Trust Company, of Wilmington, *519 Delaware, as the Trustee therein named have each executed an agreement of irrevocable trust of even date herewith in form and text identical to that attached hereto, marked Exhibit "A", and by this reference made a part hereof, and has deposited with said Wilmington Trust Company, as Trustee thereunder, the securities described in Schedule "A" attached to and made a part of said agreement of irrevocable trust, the aggregate value of which is approximately One Million Dollars ($1,000,000.00). Husband agrees to furnish to the Wife a fully executed counterpart of said agreement of irrevocable trust immediately upon receipt by him of the counterpart thereof executed by said Wilmington Trust Company as Trustee. It is understood and agreed that if the trust established pursuant to this Clause 8 shall ever be insufficient to pay said quarterly sum of $12,500.00, the Husband, if living, or his estate, if deceased, shall be obligated to pay the same. It is further understood and agreed that it shall be the obligation of the Wife to pay all federal and state income taxes consequent on said annual payments aggregating $50,000.00. 9. TAXES. The parties have heretofore filed certain *520 joint income tax returns. (a) The Husband represents and warrants to the Wife that he has heretofore duly paid all income taxes due on such returns; that he does not owe any interest or penalties with respect thereto; that no tax deficiency proceeding is pending or threatened against him thereon; and that no audit is pending with respect to any such return. (b) If there is a deficiency assessment on any of the aforementioned returns, the Husband shall give the Wife immediate notice thereof in writing. He shall pay the amount ultimately determined to be due, together with interest and penalties, if any, as well as all expenses that may be incurred if he decides to contest the assessment. (c) The Husband shall hold the Wife harmless from any claim, damage or expense arising out of the aforesaid returns and any deficiency assessment in connection therewith. (d) If there is any refund on any of the aforesaid returns, it shall belong to the Husband. (e) The Wife shall join with Husband in executing federal and state income tax returns for the year 1972, if he so requests, but the Husband shall pay all taxes due thereon, and the provisions of paragraphs (b), (c) and (d) of *521 this Clause 9 shall be applicable to such returns. (f) Save and except for the income taxes which will be payable by the Wife on the payments provided for in Clause 8 of this agreement, the Husband agrees to pay all gift, transfer or other taxes required in any way by or consequent on this agreement or the incorporation thereof by reference or otherwise in any decree of divorce hereafter entered in any suit between them. 10. ATTORNEY'S FEES OF WIFE. The counsel fees of the Wife which amount to Sixteen Thousand Dollars ($16,000.00) have been paid simultaneously herewith by the Husband to the Wife's Attorneys, Corette, Smith & Dean, with offices at Professional Building, Butte, Montana 59701, who have accepted the same in full payment of their services in the preparation and execution of this agreement and all negotiations prior thereto, and in the pending divorce action, through entry of any Decree which may be entered therein. This payment shall extinguish all liability of the Husband for attorney's fees heretofore or hereafter incurred by the Wife. 11. PROVISIONS FAIR.The Wife acknowledges that the provisions herein made for division of property and for her support *522 and maintenance, and for the support, maintenance and education of the Children, are fair, adequate and reasonable, and satisfactory to her. Accordingly she accepts the same in lieu of and in full and final settlement and satisfaction of any and all claims and rights that she may now or hereafter have agaist the Husband for her support and maintenance or for alimony in the event of divorce, and for the support, maintenance and education of the Children. 12. WIFE'S COVENANT.The Wife represents and warrants that, except with respect to the obligation for counsel fees referred to in Clause 10, the only debt of obligation she has incurred for which he or his estate may be liable, is the sum of $1,450.00 due to Anderson, Zur Muehlen & Co., Certified Public Accountants, Montana Club Building, Helena, Montana, for services in connection with this agreement. The Husband undertakes to, and shall pay or reimburse the Wife for the same. So long as he duly performs all his obligations hereunder, the Wife shall not hereafter incur any bills, debts or obligations for which he or his estate may be liable, and shall hold the Husband in all respects harmless therefrom. 13. DEFAULT: *523 BREACH. If the Husband fails in the due performance of his obligations hereunder, the Wife shall have the right, at her election, to sue for damages for a breach of this agreement, or to rescind the same in whole or in part and seek such legal remedies as may be available to her, and reasonable attorney's fees shall be allowed to the Wife. Nothing herein contained shall be construed to restrict or impair the Wife's right to exercise this election. 14. GENERAL RELEASE. Except as otherwise herein expressly provided, the parties shall and do hereby mutually remise, release and forever discharge each other from any and all actions, suits, debts, claims, demands and obligations whatsoever, both in law and in equity, which either of them ever had, now has, or may hereafter have against the other or by reason of any matter, cause, or thing up to the date of the execution of this agreement. 15. WAIVER OF ESTATE CLAIM. Each party hereby releases and relinquishes any and all rights that he or she may now have or may hereafter acquire as spouse under the present or future laws of any jurisdiction (a) to share in the estate of the other party upon the latter's death; and (b) *524 to act as executor or administrator of the other party's estate. This provision is intended to constitute a mutual waiver by the parties to take against each other's last wills under the present or future laws of any jurisdiction whatsoever. 16. MODIFICATION: WAIVER. No modification or waiver of any of the terms hereof shall be valid unless in writing and signed by both the parties. No waiver of any breach hereof or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar nature. 17. DIVORCE. Nothing herein contained shall be construed to bar or prevent the Wife from maintaining her pending suit for divorce or the Husband from defending the same, or either party from suing for absolute divorce in any competent jurisdiction because of any past or future fault on the other's part. The execution of this agreement shall not be deemed to constitute a waiver or forgiveness by either party of any conduct on the part of the other constituting grounds for divorce. However, the Wife shall not, in any such divorce suit, seek or accept any order, judgment or decree providing for alimony, counsel fees or any other provision for her *525 benefit other than as herein provided. She shall request the Court that it (a) recognize this agreement with respect to such matters, (b) expressly approve and adopt this agreement, (c) incorporate the same by reference in the judgment or decree granting divorce, and (d) provide in such judgment or decree, to the extent permitted by law, that the Court does not reserve the right to modify any of the provisions of such judgment or decree with respect to such matters. Nevertheless, this agreement shall not be merged into such judgment or decree, but shall survive the same and shall be forever binding and conclusive on the parties. 18. SITUS. This agreement shall be governed by the laws of the State of Montana. 19. ADDITIONAL INSTRUMENTS. Each party shall, at any time and from time to time hereafter, take any and all steps and execute, acknowledge and deliver to the other party any and all further instruments and assurances that the other party may reasonably require for the purpose of giving full force and effect to the provisions of this agreement. 20. NOTICES. Any and all notices given hereunder shall be in writing and shall be sent by Certified Mail, Return *526 Receipt Requested, (a) To the Husband at 2650 North 1st Street, Apartment No. 3, Grand Junction, Colorado 81501; and (b) To the Wife at Little Valley Ranch, Avon, Montana 59713. Either party may by notice similarly sent, specify a different address for the sending of notices. Each party shall at all times keep the other party informed of his or her place of residence and address, so that they may confer with respect to the Children. 21. ENTIRE AGREEMENT. This agreement constitutes the entire understanding of the parties. It supersedes any and all prior agreements between them. There are no representations or warranties other than those expressly herein set forth. 22. BINDING EFFECT. Except as otherwise stated herein, all provisions of this agreement shall be binding upon the heirs, next of kin, executors and administrators of the parties. IN WITNESS WHEREOF the parties have set their hands and seals to four counterparts of this agreement, each of which shall constitute an original, this 16th day of January, 1973. On January 16, 1973, the petitioner entered into a funded trust agreement with the Wilmington Trust Company, creating an irrevocable trust to *527 secure quarterly payments to Betty duPont of $12,500 for her support and maintenance and as alimony in the event of divorce. The trust agreement was referred to in paragraph 8 of the property settlement agreement. In accordance with paragraph 4 of the property settlement agreement, the petitioner executed a deed and a bill of sale and option to Betty duPont, both under date of January 17, 1973. The Deed conveying petitioner's interest in the Little Valley Ranch to Betty duPont states, in pertinent part, as follows: THIS INDENTURE, made this 17th day of January, 1973, by and between LAMMOT duPONT III, a single man, divorced husband of the PARTY OF THE SECOND PART, of Grand Junction, Colorado, the PARTY OF THE FIRST PART, and BETTY G. duPONT, of Avon, Montana, the PARTY OF THE SECOND PART, The Bill of Sale and Option conveying petitioner's interest in the cattle, machinery and equipment on the Little Valley Ranch to Betty duPont states, in pertinent part, as follows: THIS INDENTURE, made and entered into this 17th day of January, 1973, by and between LAMMOT DU PONT III, divorced husband of the PARTY OF THE SECOND PART, whose mailing address is 2650 North 1st Street, Apartment *528 No. 3, Grand Junction, Colorado 81501, the PARTY OF THE FIRST PART, and BETTY G. DU PONT, whose mailing address is Little Valley Ranch, Avon, Montana 59713, the PARTY OF THE SECOND PART, It was the intention of petitioner and Betty duPont and their respective counsel, Hughes and Smith, that the property settlement agreement would not be effective or carried out until after the divorce. Although the divorce decree recited that "each of the parties has a duplicate executed original of said agreement," there was actually no delivery of the property settlement agreement until after the divorce decree had been entered. And both the deed and bill of sale were delivered to Betty duPont after the divorce. A decision to transfer ownership of the three Northwestern National Life Insurance Company policies to Susan and Anne duPont was made in August 1972. On December 26, 1972, Smith as attorney for Betty duPont, sent the insurance company three requests for change of ownership of the policies from Betty to Susan and Anne duPont. The requests were signed by Betty. On January 3, 1973, the insurance company returned the assignment and change of ownership forms and requested new forms. Smith *529 protested the return of the forms, but on January 17, 1973, the new assignments were sent to the insurance company. By letter dated January 18, 1973, counsel for the insurance company informed Smith that the original assignments would be accepted. In her gift tax return filed for the first quarter of 1973, Betty duPont reported the transfer of the insurance policies as having been made on January 17, 1973. The transfer of the insurance policies to Susan and Anne duPont was made in consideration of petitioner's subsequent payment of the premiums thereon and the gift tax attributable thereto, and Betty's release of all her marital rights. Betty duPont had no intention of delivering the insurance policies to petitioner. If he had not agreed to make the premium payments for his daughters, Betty duPont would have cashed in the policies. Thus, Betty would not have transferred the insurance policies but for the petitioner's agreement to pay the gift tax thereon and all subsequent premiums. The transfer of the insurance policies was made a part of the property settlement agreement. ULTIMATE FINDINGS OF FACT 1. The transfer by Betty duPont of the three insurance policies issued *530 by Northwestern National Life Insurance Company on the life of Lammot duPont constituted an indirect gift made by petitioner Lammot duPont to his children in 1973. 2. The transfers by petitioner, pursuant to the property settlement agreement, of the Little Valley Ranch properties were made after the divorce was granted to him and Betty duPont. OPINION Issue 1. Gift Tax Consequences of Transfer of Life Insurance Policies.
Section 2511(a) of the Code provides that "the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect." Taxability does not depend upon or require an outright gift made directly from the donor to the donee. The transfer taxable to the "donor" may take the indirect form of an actual transfer to the donee by a third party owner of the proprty. See, e.g., Epstein v. Commissioner,53 T.C. 459 (1969); Clark v. Commissioner,31 B.T.A. 1082 (1935). Petitioner argues that the transfer of the life insurance policies was not made pursuant to the terms of *531 the property settlement agreement and was not meant to be consideration therefor. The opinion in Estate of Keller v. Commissioner,44 T.C. 851 (1965), is cited by petitioner in support of his position. To the contrary, respondent contends that under the terms of the property settlement agreement Betty's transfer of the insurance policies to the children was a part of her quid pro quo for consideration flowing to her under the contract, which included the petitioner's agreement to pay the subsequent premiums on the policies. Hence it is respondent's position that the transfer by Betty to the children was an indirect gift made by petitioner and taxable to him. We agree with the respondent. The assignments of the insurance policies were made as a part of the property settlement agreement between the petitioner and Betty duPont, and thus represented consideration to the petitioner. In addition, he agreed to pay all subsequent premiums on the policies and the gift tax resulting from their transfer. This was in fact accomplished pursuant to their agreement and is in accord with their testimony. We have the testimony of petitioner that he wanted to get the policies *532 to the children, and Betty's testimony that she agreed to transfer the policies to the children only in consideration of petitioner's paying the gift taxes and subsequent premiums. There is also the agreement of the parties that the transfer was made "as a part of this property settlement agreement." The transfer of the insurance policies would not have been made but for the agreement. It is the fact that Betty's transfer represented consideration to petitioner under their property settlement agreement which makes this case distinguishable from the Estate of Keller v. Commissioner,supra. See and compare Spaulding v. Commissioner,27 T.C. 479 (1956), affd. 255 F. 2d 759 (7th Cir. 1958). Accordingly, we hold that the transfer of the insurance policies constituted a gift indirectly made by petitioner and taxable to him. Issue 2. Income Tax Consequences of Transfers of Little Valley Ranch Properties.
It is agreed that the petitioner's transfers of the Little Valley Ranch properties to Betty duPont were taxable. The critical question is when the transfers became effective--when the petitioner and Betty executed their *533 property settlement agreement prior to divorce, as contended by respondent, or after the divorce, as petitioner contends. Both parties refer to the following guideline statements contained in our opinion in Deyoe v. Commissioner,66 T.C. 904, 910 (1976): The question of when a sale is complete is essentially a question of fact. No hard and fast rules of thumb exist and no single factor is controlling. The test to be applied is a practical test, taking into account all the facts and circumstances and viewing the transaction in its entirety. Clodfelter v. Commissioner,426 F. 2d 1391, 1393-1394 (9th Cir. 1970), affg. 48 T.C. 694 (1967); Commissioner v. Segall,114 F. 2d 706, 709 (6th Cir. 1940), revg. 38 B.T.A. 43 (1938). Among the factors to be considered in determining when a sale is complete are the transfer of legal title and the shift of the benefits and burdens of ownership of the property. * * * Respondent's position is that the transfers were made by petitioner upon the execution of the property *534 settlement agreement while the parties were still husband and wife, and that the limiting provisions of section 267[2] and section 1239[3] are therefore applicable. *535 The transfers here resulted in a loss to petitioner with respect to some of the properties transferred and a gain on others. Petitioner claimed the loss and treated the gains as realized from the sale or exchange of capital assets or as property described in section 1231.Respondent disallowed the loss under the provisions of section 267 and treated the gains as realized from the sale or exchange of property which is neither a capital asset nor section 1231 property, citing section 1239 in support thereof.
After considering all the relevant facts and circumstances and viewing the transactions in their entirety, we think the facts show, and we hold, that the transfers of the Little Valley Ranch properties were made after the divorce decree was entered. The testimony of the petitioner, Betty duPont, and their attorneys, Mac Hughes and Kendrick Smith, clearly indicates that the property settlement agreement would not become effective until after the divorce. It was the opinion of both attorneys that under Montana law the agreement would not be effective or final until after the District Court approved it. Cook v. Cook,159 Mont. 98, 495 P. 2d 591 (Sup. Ct. Mont. 1972). *536 Although strongly urged by respondent, we are unwilling to discard such testimony as being incredible. The entire course of conduct of the parties to the divorce and their respective counsel establishes to our satisfaction that it was intended that the transfers take place after the divorce when the petitioner and Betty duPont were no longer husband and wife. The agreement was not actually delivered to the parties until after the divorce. The deed and bill of sale were not delivered until after the divorce.In sum and substance, the parties did what they could to insure that the property settlement agreement was made concurrent with the divorce rather than in consideration of it. We reject respondent's invitation that this Court declare that the parties "were playing fast and loose with the judicial body hearing the divorce" and apply the "doctrine of judicial estoppel" to prohibit the petitioner from claiming that the agreement was not to be effective until entry of the divorce decree. The term "judicial estoppel," also called "estoppel by oath," means that a party is bound by his judicial *537 declarations and may not contradict them in a subsequent proceeding, where the prior and subsequent litigations involve the same parties and where one party has relied on the former testimony and changed his position by reason of it. 28 Am. Jur. 2d, Estoppel and Waiver, sec. 71 (1966). The doctrine simply does not apply here. The main thrust of respondent's position is that intent must be judged exclusively from the words of the property settlement agreement and the divorce decree and that, since these written instruments are unambiguous, extrinsic evidence of intent should not be utilized to give the plain language of the written instruments a different meaning or to vary or contradict their terms. Thus, respondent emphasizes that in the circumstances of this case the parol evidence offered by petitioner should not be considered determinative of the question presented. We disagree with respondent. In many cases before this Court either petitioner or respondent has attempted to introduce extrinsic evidence relating to a disputed contract, will or trust, and the other party has objected to the admissibility of such evidence based on the parol evidence rule. In a number of these *538 cases we have held that, because respondent was not a party to the instrument involved, neither he nor petitioner may successfully rely on the rule to exclude extrinsic evidence offered by the other. See, e.g., Graphic Press, Inc. v. Commissioner,60 T.C. 674, 681 (1973), revd. on another issue 523 F. 2d 585 (9th Cir. 1975); Schmitz v. Commissioner,51 T.C. 306, 317 (1968), affd. sub nom. Throndson v. Commissioner,457 F. 2d 1022 (9th Cir. 1972). In other cases we have looked to and followed the applicable state law regarding the admissibility of extrinsic evidence. See, e.g., Estate of Opal v. Commissioner,54 T.C. 154, 160 (1970), affd. 450 F. 2d 1085 (2d Cir. 1971); Estate of Craft v. Commissioner,68 T.C. 249, 259-264 (1977), which contains an extensive discussion of the application of the parol evidence rule in tax cases. Here we come out on the same path whether we follow the so-called "third-party to the instrument rule" or the state law approach. Under Montana *539 law the parol evidence rule does not apply in a controversy between a party to the contract and a stranger. As against him, a party may assert that the agreement was other or different in any respect from that which the writing expresses. Read v. Lewis and Clark County,55 Mont. 412, 178 P. 177, 180 (Sup. Ct. Mont. 1919); Rule 93-401-13, M.R. Civ. P., Repl. Vol. 7, Revised Codes of Montana, 1947. Hence it is clear that the extrinsic evidence offered by petitioner regarding the effective date of the transfers of the Little Valley Ranch properties was admissible in this proceeding. Under these circumstances we think the controlling factor was not the language of the agreement as to the date of its effectiveness. On balance, we accept the testimony of petitioner and Betty DuPont and their attorneys that the property settlement agreement was not to become effective until entry of the divorce decree. Accordingly, we conclude that the petitioner and Betty duPont were no longer husband and wife when the losses and gains in question were incurred by him. It therefore follows that respondent's determinations with respect to the applicability of sections 267 and 1239 *540 are not sustained. Decision will be entered for the respondent in Docket No. 7315-76.
Decision will be entered for the petitioners in Docket No. 7318-76. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS. (a) Deductions Disallowed.--No deduction shall be allowed-- (1) Losses.--In respect of losses from sales or exchanges of property (other than losses in cases of distributions in corporate liquidations), directly or indirectly, between persons specified within any one of the paragraphs of subsection (b). * * *
(b) Relationships.--The persons referred to in subsection (a) are: (1) Members of a family, as defined in subsection (c)(4); * * *
(c) Constructive Ownership of Stock.--For purposes of determining, in applying subsection (b), the ownership of stock-- * * *
(4) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; and * * *↩
3. Sec. 1239 provides in pertinent part: (a) Treatment of Gain as Ordinary Income.--In the case of a sale or exchange, directly or indirectly, of property described in subsection (b)-- (1) between a husband and wife; or (2) between an individual and a corporation more than 80 percent in value of the outstanding stock of which is owned by such individual, his spouse, and his minor children and minor grandchildren; any gain recognized to the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231. (b) Section Applicable Only to Sales or Exchanges of Depreciable Property.--This section shall apply only in the case of a sale or exchange by a transferor of property which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 167↩.